## ROLLINS v. PROCTOR ET AL.

1. **Landlord and Tenant:** LIEN FOR RENT: PRIORITY OF LIENS. Where during the term of a lease another was executed between the same parties and covering the same property, it was held that, while the execution of the second lease operated as a cancellation of the first, as between the parties, the lien of the landlord for rent under the second, upon property kept on the premises at the time of the change, would not be postponed by reason thereof to that of a chattel mortgage executed by the lessee prior to such change, and of which the lessor had no knowledge at the time.

2. ——: ——: WAIVER OF. The right to a landlord's lien for rent is not waived by the taking of personal security for the performance of the covenants of a lease, unless such is the intention of the parties.

*Appeal from Polk Circuit Court.*

TUESDAY, JUNE 14.

ON the 14th day of November, 1880, the plaintiff commenced this action in equity for the reformation of a lease of

certain premises, for the recovery of rent thereon from December 1879 to November 1880, at the rate of $54.15 per month, and for the issuance and enforcement of a landlord's attachment against certain property used upon the leased premises. The defendants made no defense. Hugh R. Creighton intervened and claimed a lien upon the attached property, in virtue of two chattel mortgages thereon, superior to the landlords's lien of the plaintiff.

The court rendered judgment for the plaintiff for $714.05, and ordered that the proceeds of the attached and mortgaged property be applied thereon, and dismissed the intervenor's petition. The intervenor appeals. The material facts are stated in the opinion.

*Charles A. Finkbine* and *E. McClain*, for appellant.

*W. O. Curtiss* and *Nourse & Kauffman*, for plaintiff.

DAY, J.—In October, 1877, the plaintiff leased a livery barn, the premises involved in this controversy, to L. Wells, for a period of five years, at a monthly rental of $54.15. In July, 1878, Wells sold his livery stock to Blyler & Skinner, they assuming the unexpired term of said lease. Plaintiff accepted them as tenants in lieu of Wells. Skinner sold his interest in the stock and lease to the defendant Proctor. Proctor sold to Mrs. Barrett, and in December 1878, Blyler and Mrs. Barrett made a division of stock, so that, instead of each owning an undivided half, each owned one half in severalty. After said stock had been so divided, December 31, 1878, Mrs. Barrett's livery stock in the stable was purchased by the defendant Proctor. Blyler and Proctor thus became occupants of the premises, and tenants of plaintiff in virtue of the lease which she had made to Wells two years before. Blyler and Proctor were not partners. Each owned a livery stock. Both stocks were in the same livery barn, and both proprietors were occupying the premises by virtue of the lease executed to Wells in 1877, and expiring in 1882.

Each of the proprietors of these two livery stocks made propositions to the plaintiff for a lease of the premises. Proctor's proposition was accepted and a written lease of the premises was executed to him. This lease bears date December 31, 1878, and is executed by H. R. Proctor and D. H. Young. The evidence shows that D. H. Young was not a lessee of the premises, but that he signed it simply as a surety or guarantor of the defendant Proctor. Although the lease bears date December 31, 1878, yet it appears from the evidence that, whilst it was signed on that day by Proctor and Young, and placed in the possession of the plaintiff, it was not signed and accepted by the plaintiff until several days thereafter, the exact date of such signing and acceptance not being ascertainable from the testimony. Blyler surrendered possession and vacated the premises March 1, 1879, having paid rent to plaintiff up to that time. The lease to the defendant provided for a monthly rent of $60 per month, but subsequently it was so far modified as to reduce the rent to $54.15 per month, being the same rent as that provided for in the lease to Wells. On the 31st day of December, 1878, the day that his lease bears date, the defendant Howell R. Proctor executed to the intervenor his note for $600, payable six months after date. On the same day, to secure this note, the defendant executed to the intervenor a chattel mortgage upon his stock in the livery barn in question, being the property upon which the plaintiff claims a landlord's lien, and upon his interest in the lease of the stable. This mortgage was filed for record on the 6th day of January, 1879.

On the 5th day of March, 1879, the defendant Proctor executed to the intervenor a note for $350, payable November 5th, after date. On the same day, to secure this note, he executed a chattel mortgage upon a portion of his stock in the livery barn in question, being property upon which the plaintiff claims a landlord's lien. This mortgage was filed for record February 14th, 1880.

I.   It is urged by the appellant that the acceptance of the new lease by the defendant, covering the unexpired term of the old lease, operates as a surrender of the old lease, and that as the new lease was not executed by the plaintiff until after the mortgage to intervenor was executed, the lien of the mortgagee is paramount to the lien of the landlord.   It may be conceded that, as between the landlord and tenant, the execution of a new lease for the unexpired term of a former lease operates as a surrender and. extinguishment of the old lease, so that the respective rights of the parties thereto will be governed by the new lease.   To this effect are the authorities cited by appellant. · But no principle of law or of equity requires that the surrender shall be regarded so complete and absolute as to allow the lien of a mortgage to attach intermediate the surrender of the old and the taking effect of the new lease.   At the time the mortgage to the intervenor was executed the defendant was in possession of the premises under a lease running until October, 1882, and covering the period for which rent is now claimed.  . There can be no question that when the mortgage was executed it was accepted by the intervenor subject to the right of the plaintiff to enforce a landlord's lien for the rent accruing during this term.   The intervenor is in no way prejudiced by the execution of the new lease, for the period for which rent is claimed is covered by the old, and the monthly rental sought to be recovered is the same.   The plaintiff testifies that at the time she made the lease to Proctor she had no knowledge of the existence of a chattel mortgage to Creighton, and that she first learned of it about the time suit was commenced.   If plaintiff had held a mortgage upon the property, and had surrendered and canceled it and taken a new one, in ignorance of an ·intermediate mortgage to intervenor, equity would restore her to her rights under the first mortgage.   Now, it is true the plaintiff does not seek to recover under the first lease, but she shows a state of facts under which it would be exceedingly inequitable to permit

*Marginal note:* 1. LANDLORD and tenant: lien for rent: priority of liens.

the intervenor's mortgage to take precedence. We know of no legal principle which requires us to sanction so inequitable a result.

II. It is claimed that by accepting Young as a surety or guarantor upon the lease the plaintiff waived the right to insist upon a landlord's lien. We need not determine whether the principle of waiver of a vendor's lien by the acceptance of personal security applies to the lien of a landlord. For an authority holding that the principle of such waiver does not apply to a landlord's lien, see *Smith v. Wills*, 4 Bush (Ky.), 92.

2. —— : —— : wants of.

The taking of personal security merely raises a presumption of the waiver of a vendor's lien, which presumption may be rebutted by proof. See *Kendrick v. Eggleston, ante,* 128, and authorities cited. The plaintiff testifies as follows: "I knew I had a landlord's lien upon all there was in the stable, and it would make it still stronger by Mr. Young's signature. I relied upon that security, and it was his proposition to give Mr. Young as further security." This evidence clearly shows that it was not the intention to waive the landlord's lien, and rebuts whatever presumption of waiver arises from the acceptance of the signature of Young.

The court did not err in dismissing intervenor's petition.

AFFIRMED.