CHARLES W. SMITH, Appellant, v. O. F. DAYTON, *et al.*

**Landlord's Lien: WAIVER.** An agreement that the lien shall cover both the exempt and non-exempt property does not waive the statutory lien.

**RECORDING ACTS.** A lien on exempt property is contractual and is inferior to a subsequent mortgage taken without notice by recording, or otherwise.

**WAIVER.** When the landlord so blends the rent with other items as to make it impossible to separate them, or so confuses them that payment cannot be applied, he is presumed to have waived his lien and accepted his tenant personally, especially when he takes a mortgage to secure such mingled debt and enforces it by sale.

**Practice: RECEIVER.** It is proper to appoint a receiver in actions to enforce rent liens, where third parties claim perishable property attached.

**SAME.** The court may direct him to restore such third parties' property, in his hands.

**ERROR IS WITHOUT PREJUDICE** when the erroneous refusal to dissolve an attachment is followed by appointing a receiver to take charge of it.

**JUDGMENT FOR RENT** should not be allowed when notes taken for it are not surrendered for cancellation.

**SAME.** But when all the property is sold *en masse* the mortgagee cannot take his part without showing the value of the property mortgaged to him or what all the property sold for separately.

**Exemption.** A stallion kept by a farmer for breeding purposes is not part of "the team" allowed him by Code, 3072.

*Appeal from Des Moines District Court.*—HON. J. D. SMYTHE, Judge.

WEDNESDAY, APRIL 3, 1895.

On the ninth day of September, 1889, the plaintiff, by written contract, leased to defendant Dayton and one George Heider two hundred and sixty acres of land in Des Moines county, Iowa, for the term of five years,

from and after January 1, 1890, at the agreed yearly
rental of eight hundred dollars; payment for the first
year to be made in advance, and for each subsequent
year at the end of the year.  The lease provided that
plaintiff "shall have a lien for the rent at any time
remaining unpaid upon any and all property of the
lessees used on or about the premises during the term,
whether the same is exempt from execution and attach-
ment or not."  This lease was filed for record September
9, 1889, and entered upon the real estate mortgage index,
and afterward, on March 25, 1893, was filed for record,
and entered upon the chattel mortgage index.  The
lessees went into possession of the farm sometime dur-
ing the year 1889, but in December of that year Heider
abandoned the premises and Dayton individually
assumed the contract.  At about the time of the making
the lease plaintiff sold Dayton some personal property,
amounting in the aggregate to about nineteen hundred
dollars, and at the time the lease was made a settlement
was had between the parties, plaintiff charging
Dayton with the stock and first installment of rent,
and crediting him with one thousand five hundred dol-
lars in cash received from the lessees; and the lessees
then executed a note to plaintiff for one thousand two
hundred dollars, the balance due on this settlement.
To secure this note, defendant Dayton, on the
eighteenth day of August, 1891, executed a mortgage to
plaintiff on fifty-six head of cattle, then on the farm.
This mortgage was filed for record on the day of its exe-
cution.  On the second day of September, 1891, Dayton,
being then indebted to his codefendants, Adams and
Otto, in consideration of an extension of time, executed
a chattel mortgage to them upon twenty-two head of
horses, then upon the Smith farm, to secure the amounts
due them respectively.  Afterward, and on the ninth
day of April, 1892, Dayton made to plaintiff a note for

eight hundred and seventy-five dollars, which is claimed to represent the rent for the year 1891, payable January 1, 1892, and the further sum of seventy-five dollars unpaid interest on the one thousand two hundred dollar note; and, to secure this and the one thousand two hundred dollars, on the same day executed a chattel mortgage to plaintiff upon seventy-five head of cattle, two horses, and thirty-five head of hogs. Thereafter it was agreed between Dayton and plaintiff that Dayton should surrender possession of the farm to plaintiff on March 1, 1893, and that all his rights under the lease should cease on that day. Dayton also agreed to the sale of part of his stock under the mortgage executed to plaintiff, the proceeds to be applied upon the notes the mortgages were made to secure. Part of the property covered by the mortgage was sold at private sale for eight hundred and sixty-eight dollars and sixty-six cents, and the remainder at public sale, netting five hundred and fifty-five dollars and thirteen cents. Plaintiff also agreed to pay for a well dug upon the land by defendant, and for some corn furnished by him, the sum of one hundred and fourteen dollars and twenty cents, leaving a balance due on the eight hundred and seventy-five dollar note, February 6, 1893, according to plaintiff's figures, of six hundred and two dollars and sixty-seven cents. November 7, 1892, plaintiff brought suit against defendant to recover the second year's rent, and secured a landlord's writ of attachment to issue, which was levied upon live stock, farm produce, and materials; and on January 19, 1893, plaintiff filed an amended and supplemental petition, asking judgment for the third year's rent, which had become due since the original petition was filed, and asking an alias writ, which was issued and levied upon the same property taken under the former writ, as well as on some additional property not necessary to be described at

this time. Thereafter plaintiff filed an amendment to his petition, and supplement thereto, in which he pleaded most of the facts above set forth, and alleged that defendants Adams and Otto have a claim to have some interest in or lien upon the property, but that their lien is inferior and junior to plaintiff's and he asked judgment for one thousand four hundred and seven dollars and fifty-six cents, and that his right to a lien be established, etc. Defendant Dayton answered these various pleadings by a denial and plea of payment of the rent due January 1, 1892, and a counter-claim for maliciously suing out the attachments. Thereafter, on application of plaintiff, and against the objections and exceptions of defendants, a receiver was appointed for the attached property, and the same was ordered sold by the court. Defendants Adams and Otto answered these various pleadings of the plaintiff, and thereafter plaintiff filed a supplemental petition in equity, alleging the facts with reference to the leasing of the land, the bringing of the attachment suits, and the appointment of the receiver; and further alleging that defendants claimed that part of the property seized under the writs of attachment was exempt from execution, that one Julia A. Dayton claimed a part of the attached property, and that Otto and Adams claimed certain of it under their mortgage. And plaintiff further claimed that his contract of lease covered all the property taken under the writs, and that the lien of each and all of the defendants was junior to his; and he asked for a decree establishing his lien upon the property taken under the writs superior and prior to any right or lien of the defendants, and that the funds in the hands of the receiver be distributed accordingly. Issue was joined by defendants upon the allegations of this petition, and defendant Dayton filed a counterclaim for various items of account, which will be hereafter referred to. The

cause was tried to the court, and a decree rendered dismissing plaintiff's claim for rent due January 1, 1892, without prejudice to his right to bring an independent action therefor; finding that the rent due January 1, 1893, was unpaid, and establishing a lien upon the funds in the hands of the receiver to the amount of the rent so found due, with interest, and dismissing defendant Dayton's counterclaim; finding that defendants Adams and Otto have a mortgage lien upon the funds in the hands of the receiver to the amount of their claim against Dayton, but that it is junior and inferior to plaintiff's lien.  The court also deducted from the amount in the hands of the receiver the sum of one hundred and ninety-one dollars, the value of the two certain horses theretofore found to belong to Julia A. Dayton; and the receiver was ordered to pay from the funds in his hands—First, the cost of this suit; second, the amount of plaintiff's lien with costs; and pay the balance, if any, to Adams and Otto; and the receiver was ordered to release a certain stallion held by him. Plaintiff and defendants each and all appeal.— *Affirmed.*  The plaintiff having first given notice, will be called the appellant.

*Seerley & Clark* and *Power & Huston* for appellant.

*C. L. Poor* and *Wm. C. McArthur* for appellees.

Deemer, J.—We will first dispose of plaintiff's appeal.  He claims that a landlord's lien should be established for the balance he alleges to be due upon the eight hundred and seventy-five dollar note.  We do not think so. . He has so blended his accounts with reference to the rents for the years 1890 and 1891 with other items, and has so acted with reference

to the securities taken, that we think he has waived any lien he might have had for the rent reserved in the lease for these years. *Erickson v. Smith*, 79 Iowa, 374; *Rollins v. Proctor*, 56 Iowa, 326; *Kendrick v. Eggleston*, 56 Iowa, 128. In order to have a lien for rent, the landlord must show that his claim is for rent; and if he so blends the rent account with other items that it is impossible to separate the one from the other, or if he so confuses them that when payments are made it is impossible to say which is paid, the rent or some of the other items, he is presumed to have waived his right to a lien, and to rely upon the personal responsibility of the tenant or the security taken. This presumption is further sustained by the fact that plaintiff took a mortgage upon certain personal property of the tenant to secure the one thousand two hundred dollar and eight hundred and seventy-five dollar notes, and relied upon and enforced it by sale of the property covered by the mortgage; and, whatever may be the true rule with reference to waiver in cases where such fact alone appears, it is at least corroborative of the other facts tending to show waiver. *Rollins v. Proctor, supra.* Plaintiff insists that he should have judgment for the balance remaining due on the one thousand two hundred dollar and the eight hundred and seventy-five dollar notes, independent of his right to a lien. Had he brought his action on these notes there would be much force in his position. The action, however, is predicated upon the lease and not upon the notes, and neither of the notes have been produced or tendered for cancellation. If he would have judgment for the rent he claims to be due for the years 1890 and 1891, by the terms of the lease, he ought to surrender the notes which were given in part for the rent for these years. The lower court was right in dismissing this part of the claim without prejudice to an action on the notes.

II. Defendant Dayton, in his answer, pleaded various counterclaims against plaintiff, which were disallowed by the court. We have examined each and all of these claims and find no merit in any of them.

III. After the receiver was appointed, Julia A. Dayton brought suit against the plaintiff, the sheriff levying writs, and the receiver, and recovered judgment against them for the value of two horses, which she claimed belonged to her. The lower court deducted one hundred and ninety-one dollars, the amount the two horses claimed by Mrs. Dayton sold for, from the amount found in the hands of the receiver, and this is said to be error. We think not. The receiver was an officer of the court, and, if the court found he had property in his hands not belonging to the defendant in action, he could order it turned over to the rightful owner.

IV. Complaint is made of the action of the court in appointing a receiver. Under Code, section 2903, a receiver may be appointed in such a case, and, in view of the nature of the property taken and the showing made, we think the receiver was properly appointed.

V. Numerous errors are assigned because the court refused to dissolve the various attachments and release the attached property. If it be conceded that some of these motions ought to have been sustained, yet no prejudice was wrought, for the reason that we hold a receiver was thereafter properly appointed to take charge of and sell the property, because plaintiff had either a statutory or contract lien upon the whole of the property. The landlord's lien for rent for the year 1892 was not merged in the contract lien created by the lease, for the contract expressly recognizes the statutory lien, and does nothing more than create a lien upon the property

exempt from execution, in addition to that provided for by statute.

VI. Defendants Adams and Otto filed a cross petition, in which they claim that their mortgage lien is prior and superior to the lien of the plaintiff. The allowance made to plaintiff is for rent accrued during the year 1892, for which he held no other security than the statutory lien, and a contract lien upon the exempt property; and, as these defendants' mortgage was executed after the property held by the receiver was taken upon the premises, their lien is inferior and junior to the statutory lien of the plaintiff. But, as they had no notice of plaintiff's contract lien,—it not being recorded,—it is superior thereto; that is to say, as to the exempt property, if there be any such, plaintiff's lien by contract is inferior to that of defendants Adams and Otto. *Bank v. Honnold*, 85 Iowa, 352. We then have the question as to whether any of the property in the hands of the receiver grows out of the sale of the exempt property. The testimony on this point is as follows: Defendant Dayton testified: "At the time the horses were seized I was a resident of Des Moines county, farming at the time, and claimed as exempt the two horses, Black Prince and Topsy. The horse Black Prince is a Clydesdale stallion, eight years of age, used for breeding purposes. We did not work this stallion in 1892. The other animal I claim is named Topsy." Plaintiff testified: "I was frequently on the farm in 1892, and never saw Black Prince used as a work horse." It is apparent that these horses are not the team, or one of the teams, by the use of which the defendant Dayton, as a farmer, habitually earned

his living, and consequently they are not exempt under section 3072 of the Code. Defendants Adams and Otto would have a lien superior to that of plaintiff upon one of these horses as exempt under the section before referred to, but the difficulty there is, there is no showing as to the value of this animal, and nothing to indicate what the receiver obtained for the horses separately. The lower court did not err in holding the lien of Adams and Otto junior to that of plaintiff upon the funds in the hands of the receiver.

VII. Lastly, it is insisted that the court erred in the taxation of costs. Plaintiff was taxed with all costs made on the first writ, up to the time of the levy of the second, and the costs of seizing a stallion ordered released, amounting in the aggregate to ninety-one dollars and twenty-one cents, and the defendants, with all costs subsequent to that time, amounting to three hundred and ninety-one dollars and sixty-eight cents. We see no error in this.

Some other errors are discussed by counsel, but they are all disposed of in what we have said, and the judgment of the district court is *affirmed.*