JAMES LADNER, Appellant, v. D. H. BALSLEY.

**Landlord's Lien:** BLENDING OF ITEMS. Where a landlord accepts two notes amounting to two hundred and thirty dollars, and twenty dollars of the consideration therefor is not for rent, he has no right to a landlord's attachment.

WAIVER. A lien of a landlord for rent under the Iowa statute is not waived by the reservation in the lease of a lien on all the personal property of the lessee on the premises, whether exempt from execution and attachment or not, and the seizure of the exempt property thereunder.

**Damages:** MEASURE. The expense to which a tenant was put in procuring water from neighboring farms is not the measure of damages for the landlord's failure to put in a well according to

agreement, where water could have been procured at less expense by making a well.

SAME. Evidence that a lessee was obliged to go to his neighbors a half mile or more distant, for water, and his testimony that it was for a specified amount, is insufficient to support an instruction correctly stating the measure of damages for the breach of the lessor's promise to dig a well to be the difference in rental value.

False Representations: RELIANCE: *Jury question.* A tenant testified that before the leasing of a farm he and the landlord's agent went to examine the farm, but that they found it too muddy to go over it, and so he relied on the agent's statement as to the number of acres under cultivation. *Held,* proper to submit a question to the jury as to whether the tenant acted with due care in relying on such statement.

*Appeal from Hamilton District Court.*—HON. S. M. WEAVER, Judge.

SATURDAY, OCTOBER 30, 1897.

ACTION to recover one hundred and thirty dollars rent, alleged to be due upon a written lease and promissory note given for said rent. The defendant answered, admitting the execution of the lease and note, and denying any indebtedness thereon, and pleading several matters as defense, set-off, and counter-claim, as will hereafter appear. Verdict and judgment were rendered in favor of the defendant for seventy dollars.— *Reversed.*

*George Wambach* for appellant.

*Hyatt & Hyatt* for appellee.

GIVEN, J.—I. The facts necessary to be noticed are these: On March 19, 1894, the plaintiff, through A. W. Little, his agent, leased to the defendant a certain farm, from that date until the first of March, 1895; said lease being in writing. The lease recites the rental to be two hundred and thirty dollars, and contains this

provision: "The said party of the first part shall have a lien, for the rent at any time remaining unpaid, upon any and all property of the party of the second part used on said premises during the term, whether the same be exempt from execution and attachment or not." At the same time the defendant executed to plaintiff his two promissory notes,—one for one hundred dollars, payable on or before November 1, 1895, which has been fully paid, and one for one hundred and thirty dollars, payable on or before the first day of June, 1895, being the note upon which this suit is brought. Plaintiff caused a landlord's attachment to issue against the crops of corn on said premises, and all other personal property of the defendant which had been used or kept for sale on the premises during the term of the lease, "and not exempt from execution." Under this attachment the sheriff seized four horses, two cows, five tons of hay, and about twenty-five bushels of corn. At the same time, the sheriff, by direction of the plaintiff's attorney, seized, under the clause of the lease quoted above, the following property, which was exempt from execution, namely, about seventy-five bushels of corn, four tons of hay, two cows, one or two calves, and five head of hogs; and all this property was held under the seizure up to the time of the trial, November 28, 1895. It appears that, at the time the lease and notes were executed, Mr. Little, on his own account, sold a horse to the defendant for twenty dollars, which sum was included in the notes, and went to make up the amount thereof, namely, two hundred and thirty dollars.

II.　The defendant alleges that there was a failure of consideration for said notes and lease, and that he was damaged in the sum of sixty dollars, in this: That plaintiff's agent represented to him that sixty-five acres of said land were in cultivation; that defendant, relying

thereon, executed said lease and note; and that in truth and in fact there were only about thirty-five acres in cultivation. The defendant testifies that he and Mr. Little went to look at the farm before leasing it, between the first and middle of March; that Little told him there were about sixty-five acres under cultivation; that when they were there the ground was wet and muddy; that they went over the place some twenty or thirty rods, and concluded it was too muddy, and went back; and that he relied on the statement of Little as to the amount of land under cultivation. Mr. Little testifies that he never was on the farm prior to the time in March, except that he may have been once at the house; that he did not know anything about the number of acres under cultivation. He says: "I went into the house, and the tenant there told me there were about fifty or sixty acres of land under cultivation, and I told Balsley what the tenant had told me." The court instructed as follows: "If you find by a preponderance of the evidence that at or before the time the lease was made the plaintiff's agent stated and represented to the defendant that there were sixty-five acres of cultivated land upon the leased premises, and that defendant believed and relied upon said representation, and was not in a position to know or ascertain for himself the true amount of cultivated land, and in reliance of said representations entered into the lease, and you further find that there was a materially less amount of cultivated land than was so represented, then the defendant is entitled to recover or be allowed in this action the difference between the fair rental value of the premises as they would have been had they been as represented, and the fair rental value of said premises in the condition in which they were in fact at that time. If, however, you do not find that said representations were made, or if they were made and defendant did not rely

thereon, or if such misrepresentations were made merely as a matter of opinion, and not as an assertion of fact, then no damages can be based on this branch of the defense." Plaintiff contends that under the facts the defendant had no right to rely upon this representation, and that, having opportunity to know the fact, the law will give him no relief; citing 5 Am. & Eng. Enc. Law, 340; *Longshore v. Jack,* 30 Iowa, 298; and other cases. It is a familiar rule that: "It is the duty of every person, in transacting business, to use ordinary care and prudence. If false representations are made regarding matters of fact, and the means of knowledge are equally open to both parties, and then one party, instead of informing himself, sees fit to put himself in the hands of the other, whose intention is to mislead him, the law will give him no remedy for his injury." In *Gee v. Moss,* 68 Iowa, 318, it is held that the question as to whether the injured party acted with due care and prudence in relying upon the representation of the other is a question for the jury, and not for the court; and that is the very question submitted to the jury under this instruction.

III. Defendant alleges that, as inducement to him to sign said lease and notes, the plaintiff agreed to put in a well and pump on said land, suitable for use at the house and for watering stock, and that without said promise he would not have executed said lease; that the plaintiff wholly failed to make a well or provide a pump, whereby defendant was left without water on the farm, and was compelled to go one-half a mile for water for use in the family and for his stock, to his damage one hundred and fifty dollars. The court instructed the jury that, if it found these allegations to be true, the defendant would be entitled to recover the difference in the rental value of the farm with and without such supply of water during the term.

Appellant's contention is that: "There was no basis in the evidence for this instruction. No evidence was offered showing the difference in the rental value." The only evidence was that of the defendant, that plaintiff's agent promised to furnish a well, that he did not do so, and that defendant had to go to the neighbors', part of the time a half mile, and at other times a mile, distant, for water. He was asked, "What was it worth?" to which he answered, "One hundred and fifty dollars." There is no evidence to support the instruction, and, while it states the measure of damages correctly, we think it should not have been given, on this evidence. To get water as defendant says he did is not shown to have necessarily resulted from plaintiff's failure to make a well. Defendant could not adopt an unnecessarily expensive mode of securing a supply of water, and make that the measure of his recovery. There is no evidence that the mode adopted was a reasonable one, and the evidence indicates that a supply could have been procured at less expense by making a well.

IV. The court gave this further instruction: "(6) I now call your attention to the defendant's counter-claim based upon the alleged wrongful seizure of his property under the writ of attachment issued in this cause. If you find by a preponderance of the evidence that the consideration for the note in suit was not for rent alone, but was in part for the purchase price of a horse sold to the defendant by the agent, Little, then the plaintiff was not entitled to have a writ of attachment issued to secure the payment of such note, and, if you so find, then the seizure of so much of the plaintiff's property as was taken under the writ issued in this cause was wrongful; and in such case he would be entitled to recover on this counter-claim the value, if anything, of the use of said attached property from the date of said seizure to the present time, together with the depreciation, if any, in the reasonable

market value of said property from the date of said seizure to the present time, as well as the fair market value of the hay and corn, if any, which has been used, or fed out to the stock. Plaintiff says: "It is conceded that the twenty dollars were included in the rent. This, however, would not deprive the plaintiff of his right to a landlord's attachment. Neither would the suing out of the attachment be wrongful." He cites *Merrit r. Fisher*, 19 Iowa, 354. In that case there were several distinct causes of action, one of which was exc' isively for rent. In *Smith v. Dayton*, 94 Iowa, 102, the landlord had taken the note of the tenant for rent due and for other items, and a mortgage to secure the same. It was held, "He has so blended his accounts with reference to the rents for the years 1890 and 1891 with other items, and has so acted with reference to the securities taken, that we think he has waived any lien he might have had for the rent reserved in the lease for these years." The instruction complained of is in harmony with this decision.

V. The court further instructed to the effect that, under the clause of the lease quoted above, if the jury found that the plaintiff relied upon the contract lien thereby created, and seized property thereunder, it would operate as a waiver on his part of any right to insist upon or enforce a landlord's lien under the statute, and that if he thereafter caused an attachment to issue, and to be levied upon other property of the defendant, such writ and seizure would be wrongful, and that, if they so found, the defendant would be entitled to damages for the use of the attached property, and the depreciation of the value thereof. In *Rollins r. Proctor*, 56 Iowa, 326, it is held that a landlord's lien for rent is not waived by taking personal

security, unless such was the intention of the parties.
In *Bank v. Honnold*, 85 Iowa, 353, the lease contained a clause as to exempt property, similar to that quoted above. It was held to be, in effect, a mortgage, and that it must be recorded, to bind third persons. In *Smith v. Dayton, supra*, the lease provided for a lien on exempt property, as in this case, and it was held that this did not waive the statutory lien. The defendant had a right to mortgage his exempt property to secure the rent, and this he did by said clause in the lease, and manifestly it was not the intention of the parties that the statutory lien was thereby waived. Plaintiff having the right to pursue both his contract and statutory lien, the seizure of the property under neither was wrongful. For the errors pointed out, the judgment of the district court is REVERSED.