ARMSTRONG, Appellant, v. THOMPSON, Respondent.

(255 N. W. 561.)

(File No. 7630. Opinion filed June 14, 1934.)

E. A. Berke and C. O. Trygstad both of Brookings for Appellant.

Warren & Eggen, of De Smet, for Respondent.

POLLEY, J. This is an action in claim and delivery whereby plaintiff undertakes to recover possession of certain oats, barley, and corn of the total value of $231, and of which plaintiff claims to be the owner. The said grain was raised on plaintiff's farm during the summer of 1932 by defendant as plaintiff's tenant. The contract under which defendant occupied said farm was in writing and dated on the 20th day of September, A. D. 1930. In this contract the defendant is described as the party of the first part and contains, among other things, the following provisions: "Defendant was to furnish all necessary tools, teams and other equipment to operate said farm and was to furnish all help and farm and cultivate said lands in a good and farmerlike manner. * * * To maintain and keep up the fences so as to protect said crops from injury and waste, but second party is to furnish material. * * * To keep up and maintain in good repair all buildings, stables, cribs, fences and improvements on said farm, but second party is to furnish material."

Defendant further agreed " * * * * Not to sell or remove

or suffer to be sold or removed any of the produce of the said farm or premises, or the stock, increase, income or the products herein mentioned of any kind, character or description, until the final settlement, without the written consent of the party of the second part; and until such settlement the title and possession of all hay, grain crops, produce, stock, increase, income and products, raised, grown or produced on said premises shall be and remain in the party of the second part, and said party of the second part has the right to take and hold enough of the crop, stock, increase, income and products which would upon division thereof belong to the party of the first part, to repay any and all the advances made to him by party of the second part, * * * and also to pay all indebtedness due said party of the second part by said party of the first part, if any there be * * *. That in case said party of the first part neglects or fails to perform any of the conditions and terms of this contract on his part to be done and performed, then said party of the second part is hereby authorized and empowered to enter upon said premises and take full and absolute possession of the same, and he may do and perform all things agreed to be done by the party of the first part remaining undone, and to retain or sell sufficient of the crops raised on said premises that would otherwise belong to said first party if he had performed the conditions hereof, to pay and satisfy all costs and expenses of every kind incurred in performing said contract, * * * and the residue remaining, if any, of said crops, shall belong to said party of the first part, after all conditions are fulfilled. * * * In consideration of the faithful and diligent performance of all the stipulations of this contract by the party of the first part, the party of the second part agrees, upon reasonable request thereafter made, to give and deliver to said party of the first part on said farm the one-half of all grains, except corn so raised, and secured upon said farm during said season of 1931. * * * Both parties shall cooperate in fixing up the fences in the spring of 1931, then after said fences are fixed up the party of the first part is to keep them up himself, party of the second part furnishing the materials for the same."

A portion of the land described in said lease was used as pasture land, and for this portion of the premises defendant agreed to pay a fixed cash rental, one-half of which was to be due and

payable on the 15th day of October, 1931, and the balance on the 1st day of January, 1932. Said lease contained the further provision: "To secure the payment of the rents herein specified and any advances made under this contract, and the faithful performance and strict fulfillment of all the covenants of said first party in this lease contained before and after division of the crops, grain and produce grown on said premises, said party of the first part does hereby expressly mortgage unto said second party all crops growing or grown on said premises during the term of this lease, and does hereby expressly authorize and fully empower said second party in the case of any default on the part of said first party in paying said rent or in performing any of the covenants in this lease, to seize and take possession of said mortgaged property at once. and sell the same at public auction, with notice as provided by law and out of the proceeds of said sale, to pay and discharge all rents, damages and expenses which may at the time be due and incurred, and pay over to said first party the surplus money arising from such sale."

There does not appear to have been any dispute in regard to the division of the crops raised during the year 1931, but the cash rent provided for by the terms of said lease was not paid.

On the 23d day of September, 1931, plaintiff and defendant entered into another lease of the same premises for the season of 1932 commencing on the 1st day of March, 1932, and ending on the 1st day of March, 1933. This lease is in all respects practically the same as the lease made for the season of 1931, except that it does not contain the mortgage clause contained in the prior lease as above set out. On the day following the execution of the latter lease, to wit, on the 24th day of September, 1931, defendant executed a certain promissory note payable to the plaintiff for $277.75; the same being the amount of cash rent due and unpaid from defendant to plaintiff for the year 1931 as provided for in the lease entered into on September 20, 1930.

And for the purpose of securing the payment of the said note, defendant on said 24th day of September, 1931, executed and delivered to plaintiff a chattel mortgage on defendant's "undivided interest in and to any and all crops of every kind, including tame and wild grass hay, which have been, or may hereafter be sown,

grown, planted, cultivated or harvested during the year A. D. 1932," on the premises described in the said leases.

It is not disputed that at the time of the commencement of this action there was unpaid on the two leases $316 cash rent for 1931, subject to a credit of $20, and $277.75 for 1932, subject to a credit of $12.40, leaving a balance unpaid of $561.35.

As a defense to plaintiff's right to the possession of the grain involved in this action, defendant contends, first, that by taking the note for $277.75 and the chattel mortgage to secure the same on the 1932 crop, plaintiff waived the provision in the lease whereby he retained title to said crop until final settlement with defendant was made; and, second, that because of plaintiff's failure to make necessary repairs on the leased premises, defendant had been damaged in an amount greater than the amount that he was owing to plaintiff, and that, therefore, defendant was not indebted to the plaintiff in any amount and had no right to the possession of the said grain.

We do not agree with respondent on either of these propositions. We are of the opinion that plaintiff did not waive the provision in the lease whereby he retained title to the property until settlement was made by taking the note and mortgage. Conceding, but without deciding, that a party who is the unqualified owner of property cannot also take a lien upon the same, plaintiff's ownership of the property involved in this case was not an unqualified ownership. It is apparent from the terms of the lease that he retained title to the property merely as a security for the payment of the money defendant then owed or would thereafter owe him. Defendant owned an equitable interest in the property which he could enforce as soon as the indebtedness secured by the title to the property had been fully paid. This equity was mortgageable either to his landlord or to a third person without affecting plaintiff's right to the possession of the grain until defendant's indebtedness was paid. Therefore, the court was wrong in holding that plaintiff's title was waived by the acceptance of the note and mortgage.

Lyon v. Phillips, 20 S. D. 607, 108 N. W. 554, 555, involved a lease containing a provision that the title to the crops should remain in the plaintiff until all the conditions in the lease were fully complied with by the tenant, and all indebtedness due the

lessor by the lessee had been fully paid. Plaintiff then took a note from the tenant secured by a chattel mortgage on the crops described in the lease, title to which was reserved in the plaintiff. This court held that the tenant had an "equitable interest in the flax seed that he could properly mortgage notwithstanding the term of the farm lease."

McFadden v. Thorpe Elevator Co., 18 N. D. 93, 118 N. W. 242, 243, is on all fours with this case. The lease involved contained a clause reserving title to the crop in the lessor similar to the one contained in the lease involved in this case. Thereafter the tenant executed a chattel mortgage on his share of the crops to the lessor to secure a promissory note given by the lessee to the lessor. It was contended by the defendant that when the lessor accepted this chattel mortgage he necessarily waived his right under the farm contract to retain the title to all crops in him. In reply to this contention the court say: "Appellant's contention, broadly stated, leads to the inevitable conclusion that a landlord cannot retain title to his tenant's part of the crops under a stipulation like the one in the contract in question, and at the same time or subsequently take security from his tenant by means of a chattel mortgage upon such property, and that his act in taking the chattel mortgage under such facts must be deemed conclusive evidence of a waiver by him of the legal title thus reserved. Our attention has been called to no adjudicated case supporting such contention, and we know of no such authority. As we view the question, there is no necessary inconsistency between the relations of the parties as created by the contract, and those created by the chattel mortgage. It is, of course, true that the title to the grain cannot rest in both the landlord and tenant at the same time. Under the contract the title, until a division, is retained by the landlord, but this is not an absolute unqualified title. On the contrary, the title in so far as the tenant's undivided part of the crop is concerned, is in the nature of a security; the tenant having a contingent equitable interest therein which ultimately will ripen into a perfect title upon his compliance with the contract and a division of the grain. It is, of course, clear that, until he acquires the title under the contract, his mortgage cannot attach, and the same merely amount to a contract for a lien, and we know of no reason why such a contract for a lien may not be given by the tenant and accepted by the

landlord to take effect at such time in the future as the mortgagor may ultimately acquire title to his part of the crops under the terms of the contract. Such, no doubt was the obvious intent of the parties for the landlord continued thereafter to make advances to the tenant without any security other than that afforded him by the terms of the farm contract. It may be that the landlord, if he saw fit, could waive the provisions as to security which were contained in the contract but there is no evidence that he intended to do so, and the court will not presume such intent, in the absence of any evidence aside from the mere accepting of the so-called chattel mortgage."

It will be noted that the court says: "It is, of course, clear that, until he acquires the title under the contract, his mortgage cannot attach, and the same merely amounts to a contract for a lien, and we know of no reason why such a contract for a lien may not be given by the tenant and accepted by the landlord to take effect at such time in the future as the mortgagor may ultimately acquire title to his part of the crops under the terms of the contract."

This question was again before that court in Minneapolis Iron Store Co. v. Branum, 36 N. D. 355, 162 N. W. 543, 553, L. R. A. 1917E, 298. This case involved a contract containing a clause whereby the landlord retained title to the whole crop until a division had been made. After the lease had been executed the tenant mortgaged his share of the crop to a third party. Plaintiff brought suit against the tenant, and after the crop had been delivered in the elevator and division with the landlord had been made, plaintiff proceeded against the tenant's share by garnishment proceedings. The question involved was that of priority between the garnishee creditor and the mortgagee. The court held that the mortgage lien was prior in right to the garnishee; the court using the following language: "That where a lease of a farm on shares gives to the lessee a certain share of the crop, but contains a provision to the effect that title shall remain in the lessor until the conditions of the lease have been complied with by the lessee, he (the lessee) has an equitable interest in the crop, even prior to the performance of the conditions which equitable interest may be mortgaged."

The effect of this holding is, that the mortgage lien attaches upon the execution and filing of the mortgage, and takes priority over after-acquired incumbrances.

■ The landlord may waive his lien either expressly or by conduct, but it is not waived by acts which do not show an intention to abandon·or relinquish his lien. 36 C. J. 710. Rollins v. Proctor et al, 56 Iowa 326, 9 N. W. 235; Woodcock v. Cochran, 21 N. M. 76, 153 P. 273.

■ ■ In support of his second defense, defendant showed that the pasture fences on the leased premises were out of repair; that the house was in a dilapidated condition; that the glass was broken out of some of the storm sash; that the chimneys were in need of repair; that because of such lack of repair the house could not be kept comfortable during cold weather; that the cattle sheds were in a dilapidated conditions and so cold that he was obliged to feed his cattle more feed than would have been necessary if the sheds had been in a proper state of repair. In July, 1932, the well went dry and furnished no more water, and because thereof defendant was obliged to haul water for his stock from the surrounding neighbors.

With the exception of the well, all of the above conditions existed when defendant went onto the place in the spring of 1931, and were visible by the most casual inspection. Defendant called the tenant who preceded him on the place to the stand, and by him proved that the above conditions, except in the well, existed before and at the time he left the place. His testimony showed that the pasture fences, both posts and wire, were rotted and had fallen down so that they no longer constituted a fence, but these defects, except the well, were all visible and defendant knew of their existence when he moved onto the place; and with this knowledge, and without any request that the fances be repaired, defendant entered into another contract on the same identical terms as the first.

Over proper objections defendant was permitted to introduce evidence of show that because of the above conditions of the leased premises the rental value thereof was a great deal less than it would have been had said premises been in a proper state of repair. In fact, the difference between the rental value of the premises as they were and the rental value thereof, had they been in a proper state of repair, was greatly in excess of the total amount of rent claimed by plaintiff to be due him from the defendant; and the jury found that this difference in the rental value of the premises was exactly equal to the amount of rent plaintiff

claimed to be due him. The trial court erred to plaintiff's prejudice in receiving this evidence. The lease contained a provision that the defendant himself was to make such repairs as were necessary, but that plaintiff would furnish such materials as might be necessary. Under these provisions it was the duty of the defendant to make these repairs, and if plaintiff after proper notice failed to furnish the material, then it was the right of the defendant to purchase such material and take the cost thereof out of the rent. Defendant claims he notified plaintiff of the need of repairs on fences and the house and the cattle sheds, but that no material was ever furnished by plaintiff. When defendant notified plaintiff that the well had gone dry and must either be repaired or a new well dug, plaintiff told him to go ahead and make the necessary repair and take the cost of the material out of the rent. Section 1058, R. C. 1919, which is as much a part of the contract as though bodily incorporated therein, reads as follows: "§ 1058. Lessee May Make Repairs. If, within a reasonable time after notice to the lessor of dilapidations which he ought to repair, he neglects to do so, the lessee may repair the same himself, and deduct the expense of such repairs from the rent, or otherwise recover it from the lessor; or the lessee may vacate the premises, in which case he shall be discharged from further payment of rent, or performance of other conditions."

This section provides a complete remedy for defendant, and had he availed himself of the provisions thereof, and of the terms of the contract itself, he would not only have been able to enjoy the benefit of the needed repairs, but would have been to that extent paying his debt.

At the close of all the testimony the plaintiff moved for a directed verdict. This motion should have been granted.

The judgment and order appealed from are reversed. The case is remanded to the trial court, with directions to the trial judge to grant the motion of plaintiff and to enter judgment accordingly.

ROBERTS, P. J., and WARREN and RUDOLPH, JJ., concur.

CAMPBELL, J., concurs in result.