[Sac. No. 2918. In Bank.—November 24, 1919.]

MARTIN ERICKSEN, Appellant, v. S. K. RHEE et al., Respondents.

[1] LANDLORD AND TENANT—ACTION FOR RENTS—RECOVERY ON AGREEMENT BETWEEN LESSEE AND THIRD PARTIES—PLEADING.—In an action by the lessor of farming land to recover rents against the lessee and certain third parties with whom the lessee had entered into an agreement relating to the farming and cultivation of the land, the lessor could not recover rents from such third persons on the theory that the agreement was made for his benefit under section 1559 of the Civil Code, because of the fact that such third persons set up the agreement in their answer to show there was no privity between them and the lessor, where the cause was tried on the theory that such third persons were liable under the original lease, and there was no allegation putting in issue the contention that plaintiff could recover on the agreement as one made for his benefit.

[2] ID.—NATURE OF AGREEMENT—SUBLETTING AND NOT ASSIGNMENT OF LEASE.—Under an agreement between a lessee of farming land and third persons providing that the former should farm a portion of the land with money advanced by the latter, the latter to market sufficient crop for payment of rent, and the balance of the crop to be divided in certain parts upon harvesting, and giving the third persons the option to extend the term, there was no assignment of the lease, but the interest acquired by such third persons was in the nature of a subletting, since the agreement related to only a portion of the land and to a portion of the term conveyed to the lessee.

[3] ID.—NATURE OF PARTNERSHIP RELATIONSHIP.—Under such an agreement, the partnership relation created was not in the ownership of the lease but in the business of farming.

APPEAL from a judgment of the Superior Court of Sacramento County. Peter J. Shields, Judge. Affirmed.

The facts are stated in the opinion of the court.

John C. Scott for Appellant.

Sheridan Downey, Downey, Pullen & Downey and Vincent Suhr for Respondents.

MELVIN, J.—Plaintiff appeals from an adverse judgment in an action for certain rents. The substance of the judgment was that "plaintiff take nothing from said defendants, L. G. Siller and J. L. Siller, partners doing business under the firm name and style of Siller Bros."

By his pleading plaintiff averred that on November 17, 1915, he leased to defendant S. K. Rhee land in Yolo County, described as follows: "For the first year, all that portion of land in the S. W. quarter of Section 33, Township No. 9 North, Range 1 East, of Mt. Diablo Merid., not now sowed to barley by the first party, and after the first year, then for the remainder of the term of this lease the following lands: The S. E. quarter of Section 32 and the Southwest quarter of Section 33, all in Township No. 9 North, Range 1 East, Mt. Diablo Meridian"; that said Rhee agreed to plant said premises to rice, as far as possible, and to pay $7 as rental for each acre so planted, and to pay such rent on November 17, 1916, together with $335 on the rent for the year then commencing; that Rhee entered into possession of the premises; that, in relation to the farming and cultivation of the land, defendants Rhee and Siller Bros. (the latter obtaining for that purpose a copy of the lease) entered into an agreement; that "pursuant to such agreement between Rhee and Siller Bros. the said Siller Bros. became partners with said Rhee in the farming of said leased premises under said lease and in pursuance of the terms thereof"; that thereafter defendants planted eighty-seven acres of the tract to rice and there became due "as a rental from defendants" $609 and the further sum of $335, aggregating $944; that defendants, and in particular Siller Bros., did, in violation of the terms of the lease, take, remove and carry away the crops without paying the rents;

that the lease further provided for a reasonable attorney's fee to be fixed by the court in the event of an action by either party against the other; and that plaintiff was entitled to $150 as such fee.

Defendants, Siller Bros., by their answer admitted the leasing of the premises by Rhee, as alleged in the complaint; but denied that they became partners with Rhee "in the farming of said leased premises, under said or any lease." They admitted, however, that they did enter into an agreement with Rhee in relation to farming the premises and pleaded that contract as an exhibit. Siller Bros. also denied that they ever planted to rice eighty-seven or any other number of the acres described in the lease, and denied liability for any amount of rental.

The agreement provides that Rhee shall farm about ninety acres of the land held by him under lease from Ericksen for the term of one season ending December 31, 1917. There are elaborate provisions for the presentation of accounts to Siller Bros., for the insurance, at Rhee's expense, of the safety of the men employed, and the furnishing of the farming machinery and implements by him. Siller Bros. agree to furnish Rhee $10 per acre for all land actually planted to rice, and additional sums up to $5 per acre, if Rhee should be unable out of his own funds to provide money additional to the $10 sufficient to bring the rice to harvest. There are certain provisions in the contract for repayment of any additional sums so advanced with premiums. Rhee agrees to mortgage his interest in the crop to secure the repayment of all advances. By the terms of the agreement expense of harvesting and all expenses thereafter are to be borne in the proportion of two-thirds by the copartnership 'and one-third by Rhee. The contract also contains the following provision:

"Upon the harvesting of said crop it is to be divided as follows: Two-thirds of said crop shall *go to the party of the first part* [Siller Bros.], and one-third to the party of the second part [Rhee]. It is agreed that sufficient of said first party's share of said crop shall be marketed by the first party to pay owner of said land the sum of three dollars and thirty-four cents ($3.34) per acre for each acre of land planted to rice and used in the cultivation thereof, said sum being the first party's share of said cash rental of said property. It is understood that sufficient of said *second party's*

*share of said crop shall be marketed* by the party of the
first part to pay the owner of said land the remainder of
said cash rental as specified in that lease heretofore men-
tioned by and between Martin Ericksen and S. K. Rhee.''
The party of the first part (Siller Bros.) had the right of
extending the agreement either one or two years, and there
were minor provisions not necessary to be here noticed.

The court found, among other things, ''that a partnership
existed between the defendant, S. K. Rhee, and the defend-
ants J. L. Siller and L. G. Siller, in relation to the farming
of said premises but not in the ownership of said lease'';
that the lease from plaintiff to Rhee was for three years,
but the agreement as to the farming of the property was to
continue for two or three years at the option of the Sillers,
and that there never was anything owing from Siller Bros.
to plaintiff as rental. Among the conclusions of law the
court determined that the Sillers were under no obligation to
pay to plaintiff any part of the rent reserved in the lease
from plaintiff to Rhee; and ''that any interest in the real
property described in said lease that may have been held by
any partnership in relation to farming said real property,
between the defendant, S. K. Rhee, and the defendants,
J. L. Siller and L. G. Siller, partners as aforesaid, was in the
nature of a subletting of said property and not of an assign-
ment of said lease.''

From the foregoing statement of the pleadings, the find-
ings and conclusions, it is apparent that the cause was tried
and determined upon the issues set forth in the complaint
and met by the answer. The plaintiff sued the copartner-
ship, Siller Bros., as a *lessee* and not upon the farming con-
tract as one made for his benefit. An examination of the
complaint shows that while reference is made to the con-
tract between Rhee and Siller Bros., the terms of that agree-
ment are not alleged nor does Ericksen seek to recover upon
any provision contained in it. The suit was for rent, attor-
ney's fee and costs and there was not even a prayer for
general relief.

[1] It is now contended by plaintiff, however, that by
setting up the contract between Rhee and the other defend-
ants in the answer they stood squarely upon its terms, and
that if it be an agreement made for plaintiff's benefit, he is
entitled to judgment against all of the parties to it. The

obvious answer to this contention is that by their pleading defendants were bound to set up the contract as indicating that there was no privity between Siller Bros. and the original lessor. They did not seek to establish by it any claim against Ericksen nor to confess any obligation to him. If plaintiff, on being apprised of the full text of the agreement, believed that he was entitled to judgment under its terms according to the provisions of section 1559 of the Civil Code, as a third person for whose benefit it was expressly made, he should have put that matter in issue by a pleading distinctly demanding judgment based upon that contract interpreted according to said section. This he did not do. The cause was tried upon the theory of the liability of Siller Bros. under the original lease. There was no allegation that the contract between Rhee and the copartners, Siller Bros., was not rescinded by the parties thereto before the complaint in this action was filed. There was no allegation that the Sillers ever marketed any rice or converted any portion of it to their own use. In short, there was nothing to put in issue the contention that plaintiff might have recovered upon the farming agreement as one made for his benefit. It is, therefore, not necessary to discuss the very interesting question whether that agreement was in its essence such a contract as under section 1559 of the Civil Code permits a third person to take advantage of it, or was one in which the covenant as to rent in the agreement was merely incidentally for the benefit of plaintiff, and, therefore, not one which he might enforce because falling under the rule announced in such cases as *Chung Kee* v. *Davidson*, 73 Cal. 522, [15 Pac. 100], and *Lake Ontario etc. R. R.* v. *Curtiss*, 80 N. Y. 219.

[2] Appellant contends that the transaction between Rhee and Siller Bros. amounted to an assignment of the lease. He attacks the court's conclusion that any interest of Siller Bros. in the real property described in the lease was in the nature of a subletting of said property and not of an assignment of the lease. The conclusion of the court was correct. The contract between Rhee and the Sillers had relation to a portion only of the whole estate taken by Rhee. The latter parted with only a portion of the term conveyed by the lease to him. It is true that Siller Bros. were given an optional right to an extension of the term relating to the

tract of eighty-seven acres, but as was well declared in the opinion of the learned district court of appeal when this cause was heard by that tribunal, ''this provision was a mere inchoate right which was not coextensive with the entire estate in the leasehold acquired by Rhee.'' The facts of this case bring it clearly within the rule well stated by Professor Tiffany in the first volume of his work on Landlord and Tenant, at page 907, as follows: ''As regards the . . . transfer by the tenant . . . of an estate in the whole premises less than that which he has himself, leaving a reversion in him, the courts are in unison in considering it not an assignment but a sublease, making the transferee tenant of the transferrer. The fact that the interest transferred is of a duration but slightly less than the interest of the tenant is immaterial, and so the fact that there is a difference of a day or of a fraction of a day is sufficient to constitute the transfer a sublease and not an assignment.'' This text is supported by many citations of authority. Further commenting upon the appellant's contention that the transaction was an assignment, Mr. Justice Hart, for the district court, used the following language:

''Again, in *Stewart* v. *Long Island R. R. Co.*, 102 N. Y. 607, [55 Am. Rep. 844, 8 N. E. 201], it is said: 'The rules relating to the effect of an assignment of a lease are so well settled that it is hardly necessary to do more than refer to them. Where a lessee assigns his whole estate, without reserving any reversion therein in himself, a privity of estate is at once created between his assignee and the original lessor, and the latter has a right of action directly against the assignee, on the covenant to pay rent, . . . but if the lessee sublets the premises, reserving or retaining any such reversion, however small, the privity of the estate is not established and the original landlord has no right of action against the sublessee, there being neither privity of contract nor of estate between them.'

''In the present case there was no assumption of the lease by Siller Bros. As above stated, whatever interest they acquired in the lease was only a portion of the entire estate granted by the plaintiff, and if, therefore, there was any transfer of interest in the lease it amounted only to a sublease.

"The case of *Bedford* v. *Terhune,* 30 N. Y. 453, [86 Am. Dec. 394], relied upon by the appellant here as in support of the position that the effect of the agreement between Siller Bros. and Rhee was the assignment of the lease, supports the above conclusion rather than the contention of appellant. . . . The court there said, quoting Woodfall's Landlord and Tenant, 345, that 'an assignment, as contra-distinguished from an underlease, signifies a parting with the whole term,' and quoting 1 Hilliard's Abridgment, page 126, section 55, that 'the ordinary distinction between an assignment and an underlease is, that the former transfers the land for the whole term; the latter, for only part of it.' The court did say in that case, quoting from the *syllabi:* 'Where by the terms of a lease it is made a ground of forfeiture of the term if the lessees shall let or underlet without the written consent of the lessor, and parties other than the lessees are in possession without such consent, in the absence of any proof as to the agreement under which they entered, the presumption (if any presumption is to be indulged in) is that the transfer to the occupants was by assignment, and not by underletting.' In the present case, as we have shown, the agreement between Siller Bros. and Rhee covered but a small *quantum* of the term granted by the lease to Rhee, he reserving the remainder of the whole interest to himself, both as to the term and the quantity of the land conveyed by the lease.

[3] "But that a partnership relation was created by the agreement between Siller Bros. and Rhee, not in the ownership of the lease, but in the business of farming the eighty-seven acre tract, we think is plainly shown by the language of the said agreement." With the foregoing discussion and conclusion we entirely agree.

But it is argued that by joining in a partnership arrangement to farm the land and by their conduct, particularly in view of that part of their agreement by which certain parts of the crop were to be marketed by Siller Bros. to provide a fund for the payment of the rent, Siller Bros. assumed a definite part of the debts of the copartnership and must respond, therefore, to a demand for payment of the rent in that proportion. The difficulty about this contention is that neither was it alleged by pleading nor shown by proof that any of the crop had been sold. The contract was not one

for the purchase of a part of the lease, but as the court found for farming the land. A fund was to be created for the payment of the rent by the sale of part of the crops, but this created no trust for the benefit of plaintiff. It was a provision for the benefit of the lessee, who alone was responsible for the rent. That provision did not convert the sublease into an assignment.

No other alleged errors require discussion.

The judgment is affirmed.

Shaw, J., Angellotti, C. J., Wilbur, J., Lennon, J., Olney, J., and Lawlor, J., concurred.