**WORD v. J. E. EARNEST & CO.**

No. 12681.

Court of Civil Appeals of Texas. Dallas.

April 29, 1939.

Rehearing Denied June 10, 1939.

Walter B. Branan, of Dallas, for appellant.

Touchstone, Wight, Gormley, Strasburger & Price and Claude R. Miller, all of Dallas, for appellee.

LOONEY, Justice.

J. E. Earnest & Company, a corporation, sued J. P. Word on a claim for insurance premiums, plaintiff alleging, in substance, that, it was engaged in the business of writing insurance of various kinds as agent for the Commercial Standard Insurance Company, and other companies. The action was founded upon a verified account for premiums aggregating $1,259.50, plaintiff alleging in the alternative that, at the special instance and request of the defendant, it had the Commercial Standard Insurance Company issue three several policies of insurance, one, on February 3, 1929, insuring defendant for one year against direct loss and expense, arising or resulting from claims for damages by reason of insured's ownership and maintenance of certain named motor vehicles, the premium charge for which was $816.46, and that the policy was later endorsed to cover an additional truck, the premium for which being $69.64; that, on September 17, 1929, the Commercial Standard Insurance Company issued another policy on certain motor vehicles, with a similar coverage, the premium for which was $337; that, on October 1, said Company issued to the defendant a Workmen's Compensation Policy, the premiums based upon the payroll from October, 1929, to February 1, 1930, being $128.31; the account being entitled to a credit of $81.91 by reason of the elimination of one automobile from the first policy mentioned, leaving unpaid $1,259.50; alleging further that, each policy of insurance issued to defendant stated specifically that it was issued in consideration of the premium charge specified therein; that each policy was in writing, and its acceptance by the defendant constituted a promise on his part to pay the premium specified in the policy; that the policy in each instance was the entire agreement between the insurance company and the defendant, constituting a promise in writing on the part of the defendant to pay the premium charge specified therein; each policy containing the following: And the insured agrees upon the acceptance of this policy that its terms embody all agreements between himself and the company (meaning Commercial Standard Insurance Company) relating to the insurance referred to herein. Plaintiff alleged further that, there is now due and owing plaintiff by defendant the sum of One Thousand Two Hundred Fifty-nine Dollars Fifty Cents ($1,259.50) as premiums for the policies described above; that payment has often been demanded by plaintiff, but defendant has failed and refused and still fails and refuses to pay the said sum of $1,259.50, all to plaintiff's damage in that amount.

The general and special exceptions (Nos. 3, 4, 5, 6) urged by the defendant to the petition, raised the question as to the sufficiency of the allegations to show that plaintiff was entitled to maintain the action, that is, in failing to show that it owned the cause of action or had the right to sue and recover from the defendant the amount of premiums for the policies of insurance issued to him by the Commercial Standard Insurance Company. Defendant also raised the question of limitation (two and four years), both by exceptions and special pleas; answered by a general denial, specially denied under oath the sworn account attached to plaintiff's petition, alleged specific payments and offsets, naming the amounts and dates of each, aggregating $1,240.59; plead res adjudicata, that is, that, in a suit filed by plaintiff against defendant in the county court of Dallas County, involving the same cause of action and seeking the same relief, the legal effect of the action of the court on general demurrer urged by defendant to plaintiff's petition, was an adjudication in favor of defendant. Defendant also plead in bar that, an agreement entered into between plaintiff and defendant, which was the basis for the issuance of the policies by the Commercial Standard Insurance Company, violated the statutes of this state, was against public policy and unenforceable; alleging in this connection that, while defendant was satisfactorily insured in other companies, plaintiff, through its representatives, proposed that, if defendant would withdraw his insurance business from the other companies and place same with plaintiff, a fifteen per cent discount or rebate of premiums would be allowed; that defendant accepted the proposition, cancelled the other insurance, and thereafter, and because of said understanding, the policies in question were written and the premiums sued for accrued.

The court overruled all exceptions urged by the defendant to plaintiff's petition

and, when the evidence closed, directed a verdict for the plaintiff, and rendered judgment accordingly, from which this appeal was prosecuted.

The thirty propositions urged by defendant for reversal will not be considered in detail, nor in the order presented, but the material questions will be discussed. Assuming that the claim sued upon represented a valid, unsatisfied, enforceable debt against the defendant, did plaintiff, either by allegation or proof, show that it owned the cause of action, or was entitled to sue and recover the same? We do not think so. Plaintiff alleged that it acted in the premises as agent for the Commercial Standard Insurance Company, and, at the request of the defendant, had the Commercial Standard issue the several policies, by reason of which the premiums sued for accrued. The suit was based upon an open account, probated under the provisions of Article 3736, R.S., Vernon's Ann.Civ.St. art. 3736, and, in the alternative, plaintiff also declared upon the written contracts— that is, the policies issued by the Commercial Standard, each obligated the defendant to pay the premiums therein mentioned, alleging that the policy, in each instance, constituted a written contract and a promise in writing, on the part of the defendant, to pay the premiums specified; therefore, plaintiff concluded that there was due and owing it, by the defendant, the amount sued for, to wit, $1,259.50.

The conclusion drawn by plaintiff from the facts alleged, in our opinion, did not follow from the premise, and the facts proven are no stronger than the allegations. We think it obvious that, plaintiff neither alleged nor proved that it was a party, or privy to the insurance contracts, or that they were made for its benefit, or that, by reason of any fact alleged or proven, plaintiff was subrogated to the rights of the Insurance Company, or entitled to recover from defendant the premiums due for the policies.

A case very much in point is that of Security Union Casualty Co. v. M. & V. Tank Co., Tex.Civ.App., 295 S.W. 292, 293, where the Amarillo Court, through Chief Justice Hall, said: " * * * According to the recitals in the contract, made an exhibit, the Oilmen's Reciprocal Association alone is entitled to recover. Where it does not appear from the contract, or from the allegations of the pleader, that the plaintiff is a party to it, or

that it was made for his benefit, or on his behalf, the petition is demurrable. 13 C.J. p. 715, § 828; Leon v. Kerrison, 47 Fla. 178, 36 So. 173; Douglass v. W. L. Williams Art Company, 143 Ga. 846, 85 S.E. 993; Montana Amusement Securities Company v. Goldwyn Distributing Company, 56 Mont. 215, 182 P. 119; Ericksen v. Rhee, 181 Cal. 562, 185 P. 847; McKeever v. Oregon Mtg. Co., 60 Mont. 270, 198 P. 752; 15 Encyc.Pl. & Pr. 504, 507".

The record further discloses that the basis for all dealings had between the defendant, the Commercial Standard Ins. Co. and Earnest & Company, was an agreement whereby, in consideration of defendant cancelling his insurance with other companies and turning all his insurance business over to plaintiff, he would be allowed a fifteen per cent rebate of premiums.

J. E. Earnest & Company acted as agent for the Commercial Standard Ins. Company. In some of the printed forms used in conducting the business, Earnest & Company is also described as Manager of the Insurance Company. J. E. Earnest was Secretary of the Insurance Company, and on some of the printed blanks used in transacting the business, was also described as its Manager, and also was President of Earnest & Company; Mr. Morrell was insurance salesman, employed by plaintiff Company.

The record discloses that Mr. Earnest and Mr. Morrell visited the office of the defendant in March, 1927, and offered to allow him a discount of fifteen per cent of all premiums, if he would give them all his insurance business, admonishing defendant at the time that, such an arrangement was not permitted by law and that he would have to keep quiet with reference thereto. The defendant said: "I cancelled out my policies with other insurance companies and gave them (Earnest and Morrell) my business on the ground they would give me a fifteen percent discount and they wouldn't take any of it (the insurance) unless they could get it all". The testimony of the defendant is undisputed, in fact, was corroborated by L. V. Seastrunk, assistant secretary of plaintiff Company, who testified in effect that, in the prior suit filed in the county court, based upon the same cause of action (which was dismissed), plaintiff recognized defendant's right to the fifteen per cent rebate and credited the claim therein

sued upon accordingly. Neither Mr. Earnest nor Mr. Morrell testified. As before shown, with full knowledge of and in accordance with the agreement, plaintiff credited the defendant with the fifteen per cent discount, in the suit filed in the county court, which was subsequently dismissed and refiled, being the present suit.

██ The rebate agreement was a clear violation of Article 5053, R.S., Vernon's Ann.Civ.St. art. 5053, which provides that, "No insurance company of any kind doing business in this State shall make or permit any distinction or discrimination in favor of individuals * * * nor shall any such company, or any officer, agent, solicitor, or representative thereof, pay, allow, or give, or offer to pay, allow or give, directly or indirectly, as an inducement to insurance, any rebate of premiums payable on the policy * * *. Any company or any officer or agent thereof violating the provisions of this article shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be fined in any sum not less than one hundred nor more than five hundred dollars, and the said company shall, as an additional penalty, forfeit its certificate of authority to do business in this State and the said agent shall, as an additional penalty, forfeit his license to do business in this State for one year. The company shall not be held liable under this article for any unauthorized act of its agent, unless the company shall acquiesce in such action." The case of Wright v. Wight & Wight, Tex.Civ. App., 229 S.W. 881, 882, involved a similar arrangement entered into in violation of the statute against discrimination in insurance contracts. In disposing of the question, Judge Higgins, speaking for the El Paso Court of Civil Appeals, among other things, said: "So all of the parties are in pari delicto in an unlawful agreement which the pleading and agreed facts discloses has been fully executed. This being true, the courts will leave the parties where it finds them. They will extend no aid to recover back money paid under such an illegal and forbidden contract. Seeligson v. Lewis, 65 Tex. [215], 217, 57 Am.Rep. 593; Robertson v. Marsh, 42 Tex. [149], 151; Glenn v. Mathews, 44 Tex. [400], 405." Also citing Equitable Life Assurance Soc. v. Wetherill, 3 Cir., 127 F. 947, 62 C.C.A. 579.

So, we conclude that, the trial court erred in directing verdict and rendering judgment for the plaintiff; on the contrary, believe it should have directed verdict and rendered judgment for the defendant (1) because plaintiff failed to either allege or prove that it owned, or was entitled to sue the defendant and recover upon the cause of action alleged, and (2) the rebate agreement—the basis of all the dealings between the parties—being in violation of the statute and against public policy, courts will not lend their aid or instrumentalities for the collection of premiums arising from such a prohibited and illegal arrangement, but will leave the parties where found.

██ However, if mistaken in the conclusion just announced, nevertheless, we are of opinion that, the court erred in directing verdict for the plaintiff for the following reasons; the defendant specially denied under oath the correctness of plaintiff's sworn account, and plead certain payments and offsets, giving the date and amount of each, aggregating $1,240.-59. The effect of defendant's verified answer was to destroy the probative force of the verified account attached to the petition and put plaintiff upon proof of its claim. Gulf Refining Co. v. Nelson, Tex. Civ.App., 227 S.W. 549; Walker-Smith Co. v. Watson, Tex.Civ.App., 271 S.W. 224. The amount of the premiums involved is not in dispute, but payment was plead. That certain payments were made by the defendant is conceded, but plaintiff insists that, as the defendant did not direct their application, the payments were applied on older charges for policies previously issued. On the contrary, defendant insists that, he directed application of the payments to the items of indebtedness here involved. That the defendant had the undoubted right to direct the application of payments, must be conceded. See Johnson et ux. v. Cox, Tex.Civ.App., 270 S.W. 892, and authorities cited. So, the question is narrowed to the inquiry, whether the evidence properly raised that issue.

Mr. Seastrunk, assistant secretary of plaintiff Company, testified that, as the defendant failed to direct application of payments, they were applied to prior indebtedness. On the contrary, the defendant testified as follows:

"Q. I hand you defendant's exhibits 1 to 10, inclusive, and ask you to examine them? A. These checks cover policies, the last policies he wrote for me.

"Q. Were those checks paid on the policies they are suing on here, the last one you say was issued? A. Yes sir. (Objected to and excluded)

"Q. Did you give instructions for the issuance of those checks? A. Yes sir.

"Q. Did you deliver the checks to Mr. Morrell or J. E. Earnest & Company? A. They were mailed to him, to J. E. Earnest & Company.

"Q. State just how they were handled? Did you send them an invoice? A. Invoices; they went invoices along, and we mailed the checks out.

"Q. Those invoices were for the policies they sue on here? (Objection—the invoices best evidence and the question was changed).

"Q. Were they for these same policies? A. Yes sir.

"Q. I want to ask him what he did with the invoices. What did you do with the invoices? A. We attached a check to the invoices and mailed them back to them.

"Q. You haven't seen the invoices since? A. No sir".

At another place in his testimony, on cross-examination, the witness was asked:

"Q. You didn't attempt to pay each item, for instance, when you bought that big policy from J. E. Earnest & Company to insure eight or ten trucks, the insurance on it run $816.46; you didn't attempt to pay that item with a check for $816.46? A. We paid them so much a month. We had an agreement to pay so much a month.

"Q. As a matter of fact, you never did pay that much? A. That was paid; these checks here ought to cover it.

"Q. You say they ought to cover it? A. Yes, that is what they were issued for."

The witness was being interrogated in regard to the account sued upon and was further cross-examined as follows:

"Q. I say, did you ever have an accounting with Mr. Earnest on this illegal transaction of yours to see how much your fifteen per cent was running on the whole thing? A. I tried to get them to do that, but they never would.

"Q. When you sent them one of your invoices did you deduct fifteen per cent below the invoices and mail them the balance? A. I made them a check for just what the invoice called. He kept telling me he was going to give it (the discount) to me and straighten it up but he never did".

The witness identified the checks mentioned, ten in number, and they were introduced in evidence.

■ The testimony of the defendant, in our opinion, tended strongly to show that, the payments evidenced by the ten checks were intended and directed to be applied as payments on the account sued upon, hence, raised the issue as to the direction of payments, and, instead of directing verdict for the plaintiff, the court should have submitted the issue requested, as follows: "Do you find from a preponderance of evidence that the defendant directed payment of the checks in evidence Exhibits 1 to 10 to the account sued on by plaintiff?", and that this error, standing alone, would require reversal and remand of the cause for further proceedings.

■ We do not think there is any merit in the assignments and propositions urged by the defendant on the subjects of limitation and res adjudicata, therefore, the same are overruled, but, as before indicated, and for reasons stated, think the judgment of the court below should be reversed and judgment here rendered for the defendant, and it is so ordered. However, if it can be correctly said that we are in error in reversing and rendering the judgment for the reasons stated, in such event, we think the cause should be reversed and remanded for further proceedings, because of the error of the court in refusing defendant's requested issue on the application of payments.

Reversed and rendered.