BRUNSON *v.* TEAGUE.

## Opinion delivered May 8, 1916.

1. APPEAL AND ERROR—BILL OF EXCEPTIONS—STENOGRAPHERS' NOTES.—A bill of exceptions contained a call for the clerk to copy the stenographer's report of the testimony, the record showed that a correct copy of the stenographer's transcript of the testimony was filed on a certain day. The bill of exceptions was signed by the judge and filed with the clerk on the same day. *Held,* it will be presumed that the circuit judge had the transcript of the stenographer's notes before he signed the bill of exceptions, and that the call referred to the transcript of the stenographer's notes which had already been filed on the same day, before he signed the bill of exceptions.

2. COUNTERCLAIM AND SET-OFF—SEPARATE TRANSACTION.—Under Kirby's Digest, § 6099, providing that a counterclaim must be a cause of action, "arising out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim, or connected with the subject of the action," damages for breach of one contract can not be counterclaimed in an action on another contract.

3. COUNTERCLAIM AND SET-OFF—UNLIQUIDATED DAMAGES.—Unliquidated damages, even for the breach of the contract, can not be the subject of a set-off.

4. LIENS—LANDLORD'S LIEN—RENT AND SUPPLIES.—The lessor of farm land has a lien on crops for the rent due and for supplies furnished the tenant.

5. LANDLORD AND TENANT—RENT—COVENANT TO MAKE IMPROVEMENTS—COUNTERCLAIM.—A tenant may set up, as a counterclaim, against the landlord, in an action for the value of supplies furnished, damages resulting from a breach of an agreement to make certain improvements.

6. LANDLORD AND TENANT—COVENANT TO REPAIR—MEASURE OF DAMAGES.—On the breach of the covenant of the landlord to make repairs, where the repairs are extensive and costly in comparison with the rent of the land, the measure of damages to which the lessee is entitled, is the difference between the rental value of the premises as they were, and what it would have been if the premises had been put and kept in repair, taking into consideration the purposes for which they were to be used.

7. APPEAL AND ERROR—CONFLICTING INSTRUCTIONS.—A cause will be reversed when conflicting instructions have been given upon a single issue.

Appeal from Crawford Circuit Court; *James Cochran,* Judge; reversed.

*Winchester & Martin,* for appellant.

1.    The counter-claim set up damages for the breach
of a separate and independent contract.   No such right
exists.  Kirby's Digest, § 6099; 17 Ark. 245; 27 *Id.* 489;
32 *Id.* 281; 40 *Id.* 75; 48 *Id.* 396; 89 *Id.* 368; 55 *Id.* 312.

2.    No loss or damage is shown because the new
dwelling and barn were not built, nor that if the ditch
were dug the cultivation would have been less expensive.
All these claims for damages arose out of separate and
distinct contracts.

3.    There was error in the court's instructions.

*C. A. Starbird,* for appellee.

1.    No sufficient bill of exceptions was filed in the
court below.   101 Ark. 555.

2.    The whole matter was a transaction between
landlord and tenant and grew out of the same contract.
Kirby's Digest, § 6099; 71 Ark. 408; 64 *Id.* 221.   There
is no error in the court's charge, nor in the verdict.

HART, J.  L. J. Brunson sued Will Teague before a
justice of the peace to recover $30, ten dollars of which
was alleged to be due for the rent of two acres of land
sewed in oats and the remaining twenty for two tons of
alfalfa hay furnished him as supplies.   There were no
written pleadings but the defendant Teague, admitted
owing the plaintiff, Brunson, the amount sued for and
set up as a counter-claim against plaintiff's demand
certain items which will be hereinafter stated, making a
total of $300.   The justice of the peace rendered judg-
ment in favor of the defendant for $140 as a balance due
him on the counter-claim.   The plaintiff appealed to the
circuit court.   The material facts are as follows:

The plaintiff had a farm comprising about one hun-
dred and ten acres of land which the defendant was culti-
vating during the year 1912.   In the fall of that year, the
plaintiff rented the land to the defendant for the year
of 1913.   The defendant agreed to pay as rent one-third
of the corn and one-fourth of the cotton.   The defendant
also testified that the plaintiff agreed to build him a new
dwelling house of four or five rooms, and a new barn

sufficient to accommodate six horses and the feed for them, and also to dig a ditch sufficient to drain thirty-five acres of the land; that the plaintiff failed to build the dwelling house and that he was compelled to live in a house on the farm which was out of repair; that a house like the one the plaintiff agreed to build was reasonably worth for rental purposes $5 per month; that a barn like the one the plaintiff agreed to build had a rental value of three or four dollars per month; that thirty-five acres of the land needed ditching and that it cost him $2 more per acre to cultivate it than it would have cost if the ditch had been dug. Defendant admitted that the plaintiff furnished him two tons of alfalfa as supplies which was worth $10 per ton. He also stated that some time in February, 1913, that the plaintiff told him he had some land situated about one-fourth of a mile away which the defendant might plant in oats; that the defendant planted two acres in oats and that nothing was said about the rent; that $5 per acre was a reasonable rental for the two acres; that defendant had cut and used the oats for supplies. The defendant also testified that he raised forty-four bales of cotton and that plaintiff's part of the rent was eleven bales; that the farm was situated near the town of Alma; that he hauled the rent cotton there for plaintiff and the hauling was worth $20; that he also hauled some lumber for the plaintiff to be used on the farm which was worth $5.

The plaintiff testified in his own behalf and denied that it was in the contract that he should pay for hauling the cotton to the town of Alma; that the defendant had the cotton ginned in the town of Alma and that it was a part of his contract to haul the cotton to the gin. He also denied that he agreed to build the barn or to ditch the land. He testified that the year of 1913 was a dry year and that none of the land needed ditching that year. He admitted that he agreed to build a new dwelling house provided the defendant would haul the lumber and that defendant failed and refused to do so.

The jury found for the defendant in the sum of $130 less the $30 owed by the defendant to plaintiff leaving a balance due the defendant of $100. The court rendered judgment upon the verdict and the plaintiff has appealed.

Counsel for defendant moved the court to dismiss the appeal for the reason that no sufficient bill of exceptions has been filed in the court below. To support his contention counsel relies upon the case of *Grand Lodge A. O. U. W.* v. *Dreher*, 105 Ark. 677. In that case as here there was a skeleton bill of exceptions. There was a call in the bill of exceptions in the *Dreher case* for the clerk to insert the testimony. The bill of exceptions was signed by the circuit judge and filed with the clerk before the date of what purported to be the testimony was filed in the office of the clerk. There was nothing in the record to show that what purported to be the testimony had been examined or authenticated by the circuit judge. There was nothing in the record by which it could be determined that the purported testimony was that referred to in the call in the bill of exceptions.

(1) Here the facts are essentially different. The call is for the clerk to copy the stenographer's report of the testimony. The record shows that a true and correct copy of the stenographer's transcript of the testimony was filed on the 13th day of September, 1915. The bill of exceptions was signed by the judge and filed with the clerk on that day. It will be presumed that the circuit judge had the transcript of the stenographer's notes before he signed the bill of exceptions and that the call referred to the transcript of the stenographer's notes which had already been filed on the same day before he signed the bill of exceptions. The defendant's motion to dismiss the appeal will therefore be denied.

(2-3) Counsel for the plaintiff insists that the judgment should be reversed because the court refused to tell the jury as a matter of law that the counter-claim set up by the defendant arose from a breach of a separate and independent contract. Under Kirby's Digest, section 6099, providing that a counter-claim must be a cause

of action, "arising out of the contract or transactions set forth in the complaint as the foundation of the plaintiff's claim or connected with the subject of the action," damages for breach of one contract can not be counterclaimed in an action on another contract. The court further held that unliquidated damages, even for the breach of the contract, can not be the subject of a set-off. *B. A. Stevens Co.* v. *Whalen,* 95 Ark. 488.

(4-5)  Counsel for plaintiff claims that the rent due on the two acres of land, sowed in oats arose from an independent contract and is not the subject of counter-claim, but we do not agree with them in this contention. The plaintiff leased to the defendant his farm comprising 110 acres of land. Under our statutes he had a lien not only for the rent but for the supplies which he might furnish his tenant. He furnished his tenant as supplies two tons of alfalfa hay. Then he allowed his tenant to plant two acres of land in oats, not included in the first contract. It may be inferred from the record that this was done for the purpose of raising oats to be used in feeding the tenant's stock while making and gathering the crop. This was not an independent contract. It was simply an addition to the first contract. It was connected with the first rent contract, and the whole matter grew out of the same transaction. The tenant entered into and retained possession of the rented premises under an agreement upon the part of the landlord that he would make certain improvements, which he claims the landlord failed to make. Under such circumstances the tenant when sued for the rent may set up as a counter-claim the damages resulting from such breach of the covenant. Such counter-claim arises out of the contract sued upon as the foundation of the landlord's claim and is connected with the subject of the action. Taylor's Landlord and Tenant (9 ed.), volume 1, section 331, and section 374; Underhill on Landlord and Tenant, volume 1, 565; 24 Cyc., pages 1159 and 1160; *Pioneer Press Co.* v. *Hutchinson* (Minn.) 65 N. W. 938; *Rubens* v. *Hill,* 213 Ill. 523, 72 N. E. 1129. It follows that the ruling of the circuit court in this respect was correct.

(6) The general rule is, on the breach of covenant of the landlord to make repairs, where the repairs are extensive and expensive in comparison with the rent of the land, the measure of damages to which the lessee is entitled, is the difference between the rental value of the premises as they were, and what it would have been if the premises had been put and kept in repair, taking into consideration the purposes for which they were to be used. *Young* v. *Berman,* 96 Ark. 78; 24 Cyc. 1097; Landlord's and Tenant—Tiffany, volume 1, page 589; Underhill on Landlord and Tenant, volume II, page 879.

In the instant case the repairs testified to by the defendant were extensive and he was not required to subject himself to the expense entailed by them in order to save plaintiff from damages resulting from his own breach of duty. The rented premises were to be used for farming purposes. The defendant remained in possession of the premises and made a crop on them. The alleged wrongful act or omission of the landlord tended merely to diminish the beneficial enjoyment of the premises and the measure of damages to the tenant was the difference between the rental value of the leased premises with the improvements and the rental value without the improvements.

The court gave an instruction on the measure of damages in accordance with this rule. The court, however, gave another instruction which laid down a different measure of damages and counsel for plaintiff objected to all instructions given by the court.

The court in its instructions stated to the jury the claim of the defendant on each item of damages and what his testimony in respect thereto had been, and told the jury that if it believed the testimony of the defendant it should find for him with respect to these items.

(7) Again, the court after stating the claim of defendant with respect to the different items of damages, told the jury that it might find for the defendant whatever damages he may have sustained by reason of the plaintiff failing to build the dwelling house provided it

found by a preponderance of the evidence that the defendant had performed his part of the contract. It will be noted that these instructions on the measure of damages are wrong and are in direct conflict with the correct rule on the subject given by the court. We can not know which rule the jury followed in arriving at its verdict and for that reason the judgment must be reversed. *Helena Hardwood Lumber Co.* v. *Maynard,* 99 Ark. 377; *St. Louis, I. M. & S. Ry. Co.* v. *Hudson,* 95 Ark. 506; *Merchant's Fire Insurance Co.* v. *McAdams,* 88 Ark. 550; *Doyle* v. *Kavanaugh,* 87 Ark. 364; *Darling* v. *Dent,* 82 Ark. 76; *McCurry* v. *Hawkins,* 83 Ark. 202; *St. Louis, I. M. & S. Ry. Co.* v. *Thompson-Hailey Co.,* 79 Ark. 12. Where conflicting instructions are given, the instructions can not be read as a harmonious whole. Neither can it be known whether the jury followed the incorrect instruction or the correct one. We can not know in the present case whether the jury followed the correct instruction on the measure of damages or the incorrect one. Therefore the giving of conflicting instructions on the measure of damages was misleading and prejudicial.

As we have already seen the measure of damages to which the defendant was entitled, if the jury should find in his favor, was the difference between the rental value of the premises without the improvements and their rental value with them. There was no evidence to show this difference either offered or received. The evidence received by the court on the measure of damages was not competent within the rule just announced but it was not objected to by the plaintiff and we can not reverse the judgment for the error in admitting it. There was no evidence whatever tending to establish the defendant's claim for damages within the rule announced, and this of itself constituted reversible error. For the errors indicated, the judgment will be reversed and the cause remanded for a new trial.