[Civ. No. 16542. Second Dist., Div. Three. Mar. 21, 1949.]

KENNETH K. NOBLE et al., Appellants, v. HARVEY E. TWEEDY et al., Respondents.

740

McCarroll & McCarroll for Appellants.

John C. Miles and Kenneth Chantry for Respondents.

SHINN, P. J.—Appeal from an order granting a new trial. In February, 1946, the parties to the action executed a written contract whereby defendants leased certain real property to plaintiffs for a stated term of 10 years, with an option to renew for a like period, and agreed to erect a building thereon in accordance with agreed plans and specifications, for use by plaintiffs as a bowling recreation center. The agreed rental was $500 per month and plaintiffs were required to pay $6,000 (i. e., the amount of the last year's rent) in advance as security for performance by them of their covenants under the lease. Construction of the building was commenced in March. On June 16th, defendants informed plaintiffs that because of a shortage of materials and exorbitant costs they could not complete the building in all particulars as called for in the plans and specifications which had been previously agreed upon by the parties. At this time plaintiffs had over $30,000 worth of fixtures and equipment either installed upon or already purchased for the premises. The installations, such as bowling alleys, could not have been removed except at great

expense. Upon October 28, 1946, defendants having failed and refused to complete the building as required by their contract, plaintiffs commenced this action seeking relief by way of specific performance and special damages for breach of contract. Subsequently, while the action was pending, plaintiffs were permitted by defendants to take possession of the premises and uncompleted building without thereby waiving their right of action.

The court found that the building was incomplete in a number of specified particulars, and that defendants had breached their contract, but rendered an interlocutory judgment denying specific performance as being impracticable and inequitable. On the ground that there was no evidence before it from which plaintiffs' damages, if any, could be ascertained, a further hearing was granted for the purpose of determining that issue. Upon the basis of evidence introduced at this further hearing new findings were made which incorporated the substance of the previous findings and assessed plaintiffs' damages in the amount of $75 per month for each month of the 10-year term of the lease, or a total of $9,000. The accrued damages were calculated to be $682.50, and the present value of the prospective damages was fixed at $6,455, making a total of $7,137.50 for which sum judgment was entered in favor of plaintiffs. On motion of defendants a new trial was thereafter granted by a judge other than the one who presided at the trial and hearing, but only as to the amount of damages. From this order plaintiffs have prosecuted the present appeal.

Although defendants' notice of motion for new trial set forth some seven grounds upon which the motion was made, the only ones seriously urged before the court below and before us on appeal are: (1) "Accident and surprise which ordinary prudence could not have guarded against," and (2) "the decision and judgment are against the law." No contention is made that there were any irregularities or errors of law occurring at the trial, or that the damages were excessive, or that any evidence material to defendants' case has since been discovered; and since no grounds for granting the new trial were stated in the order it must be presumed that it was not based upon the ground of insufficiency of the evidence to support the judgment. (Code Civ. Proc., § 657.)

The complaint contained a prayer for $100,000 exemplary damages, and some $117,000 as compensatory damages. The

latter sum was made up of claimed loss of profits, loss of earnings, prepaid rent, cost of equipment, etc. There was no allegation as to the difference in rental value of the building as agreed to be constructed and as actually constructed.

Defendants' claim of accident and surprise proceeds upon the theory that all of plaintiffs' evidence at the hearing, which consisted of the testimony of two expert witnesses, related to general damages, whereas the complaint alleged facts relating solely to, and prayed only for, special damages. Defendants' argument is limited to the proposition that since there was no amendment of the complaint, nor any notice to counsel prior to the hearing of the change in plaintiffs' theory of recovery, the variance in proof was one which, through no fault or neglect on their part, defendants were unprepared to meet. An examination of the record, however, discloses that defendants did not object to the evidence offered by plaintiffs in respect to general damages; that no claim of accident or surprise was made at the hearing; and that defendants at no time requested a continuance for the purpose of meeting plaintiffs' proof. In the affidavit of one of the counsel for plaintiffs in opposition to the motion for new trial, it is stated without contradiction that "prior to the commencement of the hearing, Mr. Chantry [counsel for defendants] asked affiant if he would consent to a continuance after putting on affiant's case should he, Chantry, deem the same advisable in order to call added witnesses. Affiant readily and unhesitatingly agreed." At the close of plaintiffs' case, however, counsel for defendants submitted the matter without offering any evidence at all.

 It is well settled that a party's right to a new trial upon the ground of surprise is waived if the alleged surprise is not called to the court's attention by a motion for a continuance or other relief. (*Kauffman* v. *DeMutiis,* 31 Cal.2d 429, 432 [189 P.2d 271]; *Baker* v. *Berreman,* 61 Cal.App.2d 235, 241 [142 P.2d 448]; *Bailey* v. *Richardson,* 66 Cal. 416, 423 [5 P. 910]; see, also, *Snodgrass* v. *Snodgrass,* 81 Cal. App. 360 [253 P. 755].) The rule finds its justification upon essentially practical and equitable considerations: it would be intolerable, in such cases, to permit parties to proceed without objection or application for relief, speculate as to the rulings of the court, and then after an unfavorable decision, predicate a claim of surprise upon a ground which could have been obviated in the first instance had timely objection been made. Moreover, the failure to object tends strongly to indi-

cate that the party has not, in fact, been misled. Upon the facts presented, we think there was no sufficient showing to justify the granting of a new trial upon the ground of surprise, and the order cannot be supported upon that ground.

Since the new trial was granted solely on the issue of damages, the question is presented whether the judgment was contrary to law upon that issue. Plaintiffs' evidence at the hearing consisted of the uncontradicted testimony of two expert witnesses. The first gave his opinion that the reasonable rental value of the premises ''as is'' was $425 per month, whereas, if the building had been completed according to specifications, it would have been $500 per month. The second testified that the cost of completing the building pursuant to the specifications would be $7,328. The trial court followed the testimony of the first expert and, as indicated previously, gave a lump-sum judgment for both past and prospective damages during the stated term of the lease, calculated at the rate of $75 per month.

█ The authorities uniformly hold that a proper measure of the tenant's general damages for a breach of the landlord's covenant to construct or repair is the difference between the reasonable rental value of the premises ''as is'' and as contracted to be. (*Force Bros.* v. *Gottwald*, 149 Minn. 268 [183 N.W. 356]; *Ingalls* v. *Beall*, 68 Wash. 247 [122 P. 1063]; *Partridge* v. *Dykins*, 28 Okla. 54 [113 P. 928]; *Brunson* v. *Teague*, 123 Ark. 594 [186 S.W. 78]; *Thomson-Houston Electric Co.* v. *Durant Land Imp. Co.*, 144 N.Y. 34 [39 N.E. 7]; *Kohne* v. *White*, 12 Wash. 199 [40 P. 794]; *Knight* v. *Potter*, 147 Ore. 339 [32 P.2d 1014]; *Kellogg* v. *Malick*, 125 Wis. 239 [103 N.W. 1116]; 32 Am.Jur. § 731, p. 606; 51 C.J.S. § 406, p. 1155. *Cf.*, *Gillaspie* v. *Hagans*, 90 Cal. 90, 94-95 [27 P. 34].) The amount recoverable bears no necessary relationship to the rental agreed upon, for, as said in *Kohne* v. *White, supra,* ''It cannot be said that the stipulated price in the lease absolutely indicates the rental value of the building. The respondent [lessee] may have leased this building for a less sum than it was actually worth in the market, or she may have paid more than it was worth. In the latter instance the lessor would be entitled to the benefit of her bargain, and in the first instance the lessee would be as plainly entitled to the benefit of her bargain.'' We conclude that the measure of damages employed by the court was the correct one. Respondents contend that under some circumstances the damages

might exceed the value of the property, as they possibly would have if plaintiff's lease had been for 99 years and the same measure of damages had been adopted. Whether, as an alternative, plaintiffs could have completed the bowling center according to specifications and have held defendants for the cost (see *Beardsley* v. *Morrison,* 18 Utah 478 [56 P. 303]; *Kimball & Co.* v. *Doggett,* 62 Ill.App. 528; *Myers* v. *Burns,* 35 N.Y. 269), and whether, under certain circumstances, a tenant may be under a duty to finish the construction work himself in order to mitigate the damages (see *Cook* v. *Soule,* 56 N.Y. 420, 423; *Brett* v. *Berger,* 4 Cal.App. 12, 17 [87 P. 222]; *cf., Ladner* v. *Balsley,* 103 Iowa 674 [72 N.W. 787]), are questions which are not here presented and upon which we express no opinion. It may be noted, however, that the damages assessed were in close approximation to the cost of completing the building as agreed.

█ Although on the facts presented the measure of damages was correct, the question remains whether the court could properly apply that measure over the full term of the lease, and grant a recovery for damages accruing in the future as well as in the past. It will be observed at once that defendants' obligation was not a continuing one like a covenant to *keep* in repair which would be subject to successive breaches, for each of which the tenant might sue (*Block* v. *Ebner,* 54 Ind. 544; *Beach* v. *Crain,* 2 N.Y. 86, 95 [49 Am.Dec. 369]; 32 Am.Jur. § 714, p. 590); but, like a covenant to *put* in repair, was entire and subject to only one breach for which only one action would lie (see *Bromberg* v. *Eugenotto Const. Co.,* 162 Ala. 359 [50 So. 314]; *Coward* v. *Gregory,* [1866] L.R. 2 C.P. 153, 169, 171; 1 Tiffany on Landlord and Tenant 600; 1 McAdam on Landlord and Tenant (5th ed.), p. 550; 51 C.J.S. § 368, p. 1103). By the terms of the contract, defendants were required to complete the building, pursuant to specifications, prior to placing plaintiffs in possession. By their failure to do so, the covenant was fully and finally breached before the term began, and plaintiffs were compelled to seek a complete recovery in one action for the full damage sustained by them. It follows that all damages which accrued prior to judgment, as well as any "detriment . . . certain to result in the future," were compensable in this action (Civ. Code, § 3283).

Defendants challenge the legality of the judgment chiefly upon the ground that any future detriment to plaintiffs is inherently incapable of ascertainment within the degree of

certainty required by the code. It is said that the judgment ignores the possibilities that plaintiffs may breach their lease and be ousted; that they may fail in business and become insolvent; that the lease may be terminated by the destruction of the building; or that future rental values may be quite different from those upon which the judgment was based. If any of these contingencies, or other similar changes in the conditions and circumstances of the parties, should occur, it is said that a "windfall" will have been given plaintiffs under the provisions of the present judgment.

 We think the argument is based on a fundamental misconception of the nature of the requirement of certainty in respect to future damages. The rule is satisfied by a showing of reasonable certainty that substantial future damages will result (*Caminetti* v. *Pacific Mut. Life Ins. Co.*, 23 Cal.2d 94, 103 [142 P.2d 741]; *Meyers* v. *Nolan,* 18 Cal.App.2d 319, 324 [63 P.2d 1216]), and the fact that the amount thereof may be difficult of exact admeasurement, or subject to various possible contingencies, does not bar a recovery. (*Monroe* v. *Owens,* 76 Cal.App.2d 23, 29-31 [172 P.2d 110]; *Long Beach Drug Co.* v. *United Drug Co.,* 13 Cal.2d 158, 174 [88 P.2d 698, 89 P.2d 386]; anno., 78 A.L.R. 856.) The Civil Code declares the right of a party injured by a breach of contract to recover an amount which will compensate him for all detriment proximately caused by the breach, or which in the ordinary course of events would be likely to result therefrom. (Civ. Code, § 3300.) In regard to damages for breach of contract, it has been said: "The law seeks to give the complaining party the value of his bargain—to prevent a loss which the fulfillment of the contract would have prevented—to put the injured party, so far as money can do it, in the same position as if the contract had been performed." (*Coburn* v. *California etc. Co.,* 144 Cal. 81, 84 [77 P. 771]. See, also, Civ. Code, § 3358; 8 Cal.Jur. 821.) In the instant case, it is manifest that defendants committed a substantial breach of their contract, and that plaintiffs thereby failed to receive the full value of what they had bargained for. There is no uncertainty as to the fact of future damages but only as to the amount which will accurately compensate plaintiffs for the loss which they sustained. The undisputed evidence disclosed the present and past detriment, in terms of decreased value received, to be $75 per month. Upon this evidence the court could not have done otherwise than adopt this figure

as a reasonably close approximation of what the future detriment would be, and in so doing properly ignored the various contingencies pointed out by defendants. The possibilities of a breach by plaintiffs, or insolvency, or of destruction of the building, are wholly speculative and fanciful. It is clear that an award of damages could not be *granted* upon the basis of anticipated future injuries or other events as purely hypothetical as these; and it follows by way of analogy, that they likewise do not constitute a sufficient basis for *denying* a recovery for damages which are otherwise reasonably certain to be sustained.

▮ In general, in the estimation of future damages a court is entitled to consider only those contingencies which are reasonably probable of occurrence and are reducible to a present monetary value. Whatever degree of uncertainty is introduced by the possibility of future events affecting the extent of injury, which are wholly conjectural and have no ascertainable present worth, has been uniformly disregarded by the courts, and awards of prospective damages under such circumstances have been regularly upheld. (See McCormick on Damages, pp. 48 et seq.; *Holt Manufacturing Co.* v. *Thornton*, 136 Cal. 232, 235 [68 P. 708] ; *Shoemaker* v. *Acker*, 116 Cal. 239 [48 P. 62].) ▮ As long as there is available a satisfactory method for obtaining a reasonably proximate estimation of the damages, the defendant whose wrongful act gave rise to the injury will not be heard to complain that the amount thereof cannot be determined with mathematical precision. (*Hacker etc. Co.* v. *Chapman V. Mfg. Co.*, 17 Cal.App.2d 265 [61 P.2d 944] ; *Pacific etc. Co.* v. *Alaska Packers' Assn.*, 138 Cal. 632, 638 [72 P. 161] ; *Seymour* v. *Oelrichs*, 156 Cal. 782, 803 [106 P. 88, 134 Am.St.Rep. 154] ; *Calkins* v. *F. W. Woolworth Co.*, 8 Cir., 27 F.2d 314, 320. See, also, *Natural Soda Prod. Co.* v. *City of Los Angeles*, 23 Cal.2d 193, 199-200 [143 P.2d 12].) The method in the present case was practicable and fair, and the amount of damages assessed was as reasonably accurate as the circumstances would permit.

▮ It appears to have been argued on the motion for new trial that any possibility that defendants might incur an undeserved loss, or that plaintiffs might enjoy a windfall, through the occurrence of some future contingency such as insolvency or destruction of the premises, could have been obviated by granting relief in the form of a reduction of the rent from $500 to $425 per month over the remainder of the term instead of a lump-sum award. Similar contentions were

considered by the court in *City of Pasadena* v. *Porter*, 201 Cal. 381 [257 P. 526, 53 A.L.R. 679], in reference to the compensation to be paid to a tenant where a portion of the leased premises was taken in eminent domain proceedings. Pointing out that the tenant remained bound by his contract to pay the full rental agreed upon, the court held (p. 388) that it had "no power to reform or revise the lease in question, nor to determine to what extent the covenant to pay rent shall be affected if at all." In answer to the claim (identical to that urged here) that the landlord might sustain great loss if, after satisfaction of the judgment, the tenant should become insolvent, the following passage was quoted from *Gluck* v. *Baltimore*, 81 Md. 315 [32 A. 515, 48 Am.St.Rep. 515], wherein the same question was considered: "At best this is a mere suggestion of a possible hardship. . . . Obviously a principle, if sound, ought to be applied wherever it logically leads, without reference to ulterior results. That it may, in consequence, operate in some instances with apparent, or even with real harshness and severity, does not indicate that it is inherently erroneous. Its consequence in special cases can never impeach its accuracy." It is clear that a judgment in an action at law, reducing the rental payments agreed upon by the parties, would be contrary to settled principles in the ascertainment of damages to accrue in the future.

 The practice of reducing future damages to present value is in full harmony with the fundamental principle that damages should be compensatory only, and has frequently been the subject of judicial approval. (*Dye* v. *Schick*, 74 Ind.App. 459 [129 N.E. 242]; *Hollwedel* v. *Duffy-Mott Co.*, 263 N.Y. 95 [188 N.E. 266, 90 A.L.R. 1312]; *Parker* v. *King*, 68 Ga.App. 672 [23 S.E.2d 575]; *Proctor* v. *Union Coal Co.*, 243 Mass. 428 [137 N.E. 659]; 25 C.J.S. § 74, p. 567; 15 Am. Jur. § 26, pp. 419-420; anno., 90 A.L.R. 1318.) It is a practice which has long been commonplace in actions for death or personal injury. (See annotations, 77 A.L.R. 1439, 105 A.L.R. 234; *Chesapeake & O. R. Co.* v. *Kelly*, 241 U.S. 485 [36 S.Ct. 630; 60 L.Ed. 1117] and cases there cited. From the record, however, it is evident that in computing present value, the court employed the "legal" interest rate of 7 per cent. Although there is some conflict of authority as to the proper interest rate to be used (compare, *Galveston H. & S. A. Ry. Co.* v. *Dehnisch* (Tex.Civ.App.), 57 S.W. 64, and *Chesapeake & O. R. Co.* v. *Kelly, supra,* with *Aetna Life Ins. Co.* v. *Geher,*

9 Cir., 50 F.2d 657, noted in 5 So.Cal.L.Rev. 330), the error, if any, was favorable to defendant and is beside the issue. We mention it only to say that we do not, impliedly, approve the method that was used.

Respondents make the assertion that the court found in the first stage of the trial that the reasonable rental value of the premises was $750 per month and they argue that the court in the later hearing could not properly find a rental value of $500 per month. Respondents have misread the first findings. There was no finding as to the rental value in the first hearing.

The order granting a new trial is reversed.

Wood, J., and Vallée, J., concurred.

A petition for a rehearing was denied April 6, 1949, and respondents' petition for a hearing by the Supreme Court was denied May 19, 1949. Schauer, J., voted for a hearing.