[Civ. No. 17027.   First Dist., Div. One.   Dec. 17, 1956.]

LOUIS L. COLLINS et al., Respondents, v. HENRY G. KOBOLD et al., Appellants.

Matthew S. Walker for Appellants.

John L. Garaventa for Respondents.

AGEE, J. pro tem.*—Defendants appeal from a judgment awarding damages to plaintiffs for a failure to disclose a material fact as to real property leased by them to plaintiffs under a written lease containing an option to purchase.

The property consists of approximately one acre and is located on Port Chicago Highway near the town of Concord, Contra Costa County. Appellants bought it in December, 1948. It had no buildings on it at that time. Thereafter appellant Kobold constructed a house and a few buildings on the property and had one small building moved on. No permit was ever obtained for any of the building operations.

In March, 1952, Kobold sold the property to one Cooper under a contract of sale. Cooper did not keep up the payments required and reassigned his interest to Kobold in January, 1953. During the time he was on the property, Cooper constructed an additional room onto the house. In January or February, 1953, one Olsen, a deputy building inspector of Contra Costa County, told Kobold that Cooper had left the house in a bad condition and not in accordance with the building code. He stated that he had ordered any further work stopped and had cited Cooper to appear before the district attorney. He further told Kobold that the original part of the house, which Kobold had constructed, was "absolutely far below code, . . . . There was no plumbing in it; the electric work was not even electric work that was inside." Olsen testified to many other defects and stated that it would cost more to rectify them than the house then would be worth. However, he did not tell this to Kobold at that time.

In March, 1953, Kobold listed the property for sale with one Nichols, a real estate broker. On April 18, 1953, respondent Collins went into Nichols' office and stated that he was looking for a suitable place to live and operate a nursery. Nichols showed him the property. The doors of the house were locked and they were unable to view the inside. Collins and Nichols then returned to the latter's office and Collins made an offer to lease for three years at a rental of $55.00 per month, with an option to purchase at any time during such period for $5,500. This was put into a printed form lease which contained the standard provision as to the use of the premises. As completed, this clause read as follows: "That lessee shall use the premises for . . . Residence and Nursery . . . and for no other purpose . . ." Respondents signed the lease as prepared and

*Assigned by Chairman of Judicial Council.

Nichols took it to Kobold. Kobold read it over and he and his wife signed their acceptance. He said nothing to Nichols or to respondents about the condition of the house, despite his knowledge that one of the two uses of the premises was to be as a "residence."

On May 19, 1953, respondents arrived at the property, ready to take over its occupancy. They discovered that the house had been officially condemned as being unfit for human habitation. This knowledge was first acquired through two signs which had been posted on the house the day before by the authorities, each reciting "Unsafe" and "Do Not Enter."

Respondents nevertheless went ahead and took over possession of the premises. They rented quarters nearby for $30.00 per month and later rented a trailer in which they lived and which was parked on the property. This action for damages followed.

The trial court found that the house had been built in violation of the existing ordinances of the county of Contra Costa and without the permits or inspection required by law; that the house was wholly unsafe and unfit for human habitation and could not be lawfully occupied for such purpose; that appellants knowingly concealed this from respondents and respondents did not learn thereof until May 19, 1953, the day upon which they entered into possession under the lease; that respondents could not have by exercising reasonable care and diligence discovered these facts; that a material consideration to respondents for the entering into of the lease was their use of the house as a residence.

There can be no question that respondents have a right of action for appellants' failure to disclose the defects which they had knowledge of concerning the use of the house as a residence. (See *Milmoe* v. *Dixon*, 101 Cal.App.2d 257 [225 P.2d 273]; *Barder* v. *McClung*, 93 Cal.App.2d 692 [209 P.2d 808]; *Unger* v. *Campau*, 142 Cal.App.2d 722 [298 P.2d 891].) They can elect to stand on the contract and sue for damages. (*Rothstein* v. *Janss Inv. Corp.*, 45 Cal.App.2d 64, 69 [113 P.2d 465]; 12 Cal.Jur. 781, 782; *Bagdasarian* v. *Gragnon*, 31 Cal.2d 744 [192 P.2d 935].)

Here, both Collins and Nichols testified that the reasonable value of the property, if the house had been inhabitable was $5,500, but that, because the house had to be demolished, and removed, the property was worth only $2,500. They also testified that the reasonable rental value of the property, if

the house was inhabitable, was $55 per month and that, without the house, it was $25 per month.

The trial court reached the conclusion that respondents were entitled to damages in the sum of $3,000 less unpaid rental at $25 per month for the period up to November 30, 1954. The trial court computed the total rental up to November 30, 1954, at $25 per month, as being $509.63 and gave credit for the $385 paid by respondents, leaving a balance of $124.63. This amount was deducted from $3,000, leaving a balance of $2,875.37, and judgment was rendered in favor of respondents in this amount.

The action was tried in one day, November 9, 1954. At the end of the trial the judge suggested that respondents should exercise their option to purchase and that in order to do so they need tender only the difference between the option price, $5,500, and the judgment which he intended to render in their favor.

In a memorandum decision dated December 17, 1954, the trial judge states that on November 30, 1954, respondents exercised their option to purchase. There is nothing in the record to support this statement and apparently the judge was advised of this fact informally.

While the lease was pleaded *in haec verba* in the complaint and the lease contains the option clause, there is otherwise nothing in the pleadings to indicate that this clause was in any way involved in the issues. ▇ If respondents did exercise the option validly, the effect would be to terminate the lease and create a contract of sale as of the date of such exercise. (*State* v. *Agostini*, 139 Cal.App.2d 909, 914 [294 P.2d 769] ; *Murfee* v. *Porter*, 96 Cal.App.2d 9, 18 [214 P.2d 543].) This would probably explain the trial court's computation of rental up to but not beyond November 30, 1954. ▇ Another effect of the exercise of the option, if done on November 30, 1954, might well be a waiver by respondents of all damages for fraud and deceit because by that time they were fully aware of the condition of the property. (*Schied* v. *Bodinson Mfg. Co.*, 79 Cal.App.2d 134, 142 [179 P.2d 380].)

▇ However, whatever rights or issues arose upon the attempted exercise of the option on November 30, 1954, should be made the subject of supplemental pleadings or a new action. (*California etc. Co.* v. *Schiappa-Pietra*, 151 Cal. 732, 742 [91 P. 593] ; *Yager* v. *Yager*, 7 Cal.2d 213, 217 [60 P.2d 422, 106 A.L.R. 664].) ▇ The situation at the conclusion

of the trial on November 9, 1954, was that the trial court had before it an action for damages for fraud and deceit in the execution of a lease for three years at $55 per month rental when the reasonable rental was only $25 per month. Under such circumstances the measure of damages is for the difference between these amounts for the full term of the lease. (*Noble* v. *Tweedy*, 90 Cal.App.2d 738 [203 P.2d 778].) The lease called for a total rental of $1,980. The reasonable rental was $900. The difference is $1,080, which is the amount of damages sustained. This, of course, is upon the premise that the respondents have elected to stand upon the lease and are therefore bound to pay the agreed rental.

The foregoing method of computing damages was followed in *Noble* v. *Tweedy, supra*. There the defendants leased certain real property to plaintiffs to be used as a bowling recreation center. Defendants agreed to erect a building thereon according to certain plans and specifications. The rental was for $500 per month and the term was for 10 years. Defendants did not complete the building as required by their contract but plaintiffs moved in anyway and within a few months thereafter sued for damages. The testimony was that the reasonable rental value of the property, if the building had been completed according to specifications, was $500 per month but that it was only $425 per month "as is." The trial court computed damages at $75 per month for the entire 10 years. Despite the fact that plaintiffs' complaint alleged loss of profits, loss of earnings, prepaid rent, cost of equipment, etc., and there was no allegation as to the difference in rental value of the building as agreed to be constructed and as actually constructed, the court said, at page 743: "The authorities uniformly hold that a proper measure of the tenant's general damages for a breach of the landlord's covenant to construct or repair is the difference between the reasonable rental value of the premises 'as is' and as contracted to be. [Citing numerous authorities.]" In the instant case the appellants contracted in the lease to provide "a residence" for respondents and in this there was a complete failure to perform. It follows that in an action for damages on the lease the method of computing damages as outlined above is the proper one.

The record shows that, up to the time of trial, respondents had paid to appellants a total sum of $385 as rent. This would satisfy the rent for the first seven months of the term of the lease, which commenced on May 15, 1953. The trial

was held on November 9, 1954, and by that time an additional eleven months, or $605, had accrued. This amount should have been allowed as an offset to the damage award. Accordingly, the judgment should have been for $1,080 minus $605, or $475.

We wish to state that we are not passing upon the legal effect of whatever it was that respondents did after the trial concerning the option. The undisputed testimony is that the property was worth $5,500 if the house had been inhabitable. Respondents had an option to purchase for that same amount. It may be that the reason why respondents did not contend at the trial for any damages based upon the option was because of this. If the option price had been for less than $5,500, then respondents would undoubtedly have contended for the difference between $5,500 and the option price as an additional item of damages.

The judgment is modified by reducing the amount thereof to $475, and, as so modified, affirmed in all other respects. The parties are to bear their own respective costs on appeal.

Bray, Acting P. J., and Wood (Fred B.), J., concurred.

Petitions for a rehearing were denied January 16, 1957.