[Civ. No. 25572. Second Dist., Div. Three. Apr. 30, 1962.]

JOSEPH GILMAN, Plaintiff and Respondent, v. LEO NEMETZ, Defendant and Appellant.

Seltzer, Fried & Notrica for Defendant and Appellant.

Haig Kehiayan for Plaintiff and Respondent.

FORD, J.—The defendant has appealed from a judgment for damages in favor of the plaintiff. The controversy arose out of a transaction in which the defendant sold a retail liquor business to the plaintiff and executed a sublease of business premises.

The evidence which gave support to the findings of fact of the trial court will be stated. On May 24, 1948, the defendant Nemetz and another leased from persons named Greenhagen premises which were described as lots 149, 150 and 151 and were located on Figueroa Street near Century Boulevard in Los Angeles. A store building was on lot 151. The other lots were used for the parking of vehicles. The lease was for a period of 10 years ending May 31, 1958, and the premises were to be used for the conduct of the business of a general retail food market.

Lot 152 adjoined the Greenhagen property and was on the southwest corner of Century Boulevard and Figueroa Street. It was improved with a store building. On October 1, 1953,

the defendant Nemetz leased that property from Wilhelmina Bardelli for a term of five years at a rental of $200 a month. Under the terms of the lease the lessee was given an option to renew the lease for an additional period of five years at a rent of not less than $250 per month. Thereafter the defendant used the buildings on the Greenhagen and Bardelli properties as though they constituted a single market building.

On November 5, 1953, as part of a transaction wherein the business other than the retail liquor business was sold by the defendant Nemetz, he and Earl Rosenthal and Aaron Frankel executed two instruments, each being entitled "Sub-Store Lease." In one the property involved was described as being "Prenises [sic] occupying front and side of building No. 10001 on Figueroa Street." The term was stated to be "four years and seven months commencing on the 5th day of November, 1953, and ending on the 31st day of May, 1958." It was further stated as follows: "This lease is a Sub-Lease of a lease dated May 24, 1948 between . . . Greenhagen, Lessors, and Louis Friedkin and Leo Nemets [sic], Lessees, . . . ." In the other document executed on the same date it was stated that Nemetz leased "that certain store Premises occupying Front and side of building No. 10001 on So. Figueroa Street" for a term of four years and eleven months commencing on November 5, 1953, and ending on May 30, 1958. Therein it was further stated as follows: "This lease is a Sub-lease of a lease dated October 1, 1953, between Wilhelmina Bardelli, lessor, and Leo Nemetz, lessee, . . . ."

As a part of the transaction between the defendant Nemetz and Rosenthal and Frankel, it was agreed that Nemetz would pay to Rosenthal and Frankel rent in the amount of $150 per month for the premises of the liquor department.

About September 1954, the transaction in which the retail liquor business was sold by the defendant Nemetz to the plaintiff had its inception. In that month they executed a document entitled "Sub-Store Lease" wherein it was provided that Nemetz did thereby lease to the plaintiff "a portion of that certain store described as the area approximately 20 feet by 16 feet of the Southwest corner of the building together with a storage space in the rear portion of the building, which area is now being used as a liquor store in building No. 10001 on South Figueroa Street . . . to be used for the purpose of conducting and carrying on the business of dealing in the retail sale of beer, wine and alcoholic beverages generally . . . for the time which remains to Leo Nemetz by virtue of a

Lease entered into between him as the Lessee and Wilhelmina Bardelli as the Lessor, which lease runs to October 1, 1958, together with an additional option of five (5) years at the same rental as provided herein, to-wit, $150.00 per month." In addition to such amount of rent, the plaintiff was required to pay "the sum of $15.00 per month for the use of the utilities." It was further stated therein as follows: "This lease is a Sub-Lease of a Lease dated October 1, 1953, between Wilhelmina Bardelli, Lessor, and Leo Nemetz, Lessee, and the terms of said Lease are made a part of this Sub-Lease. . . . Leo Nemetz hereby agrees that he will exercise his option to renew the Lease herein referred to."

At the time the plaintiff purchased the liquor business from the defendant, the structures on lots 151 and 152 appear to have been arranged so as to be operated as a single market building. When the plaintiff first discussed the matter of the purchase with the defendant Nemetz, he understood that Nemetz was the "master tenant." The liquor store occupied the northeast portion of the building on lot 152, although it was described in the lease given to the plaintiff by the defendant as being "20 feet by 16 feet of the Southwest corner of the building." The remaining portion of the building on lot 152 was used by the operators of the food market except that, at the back of the building, space in a garage was used by the defendant Nemetz for the storage of soft drink containers. In the southwest portion of the structure on lot 151 were spaces which were used by the defendant Nemetz for the storage of liquor and for office purposes in connection with his operation of the liquor business. The defendant represented to the plaintiff that all of such space was being obtained by the plaintiff for use in the operation of the liquor business. In the area where the retail sales of liquor were made the storage space was inadequate. The plaintiff relied on the representation made by the defendant and would not have entered into the transaction without the inclusion of the designated space. Mr. Nemetz did not give him the Bardelli and Greenhagen leases to take to his attorney before the agreement was consummated. The plaintiff did not take possession of the premises until June 1955 because of proceedings with respect to the suspension of the liquor license. In the operation of the liquor business thereafter, the plaintiff used all of the space which the defendant had shown him. William Giragosian succeeded to the interests of Rosenthal and Frankel before the plaintiff took over the liquor store. The defendant

told him to pay his rent to Mr. Giragosian and he did so. In the early part of 1958, the plaintiff told Mr. Giragosian that he desired to exercise his option so as to extend the term of his lease for a five-year period, but Mr. Giragosian denied that the plaintiff had any such right. Although requested by the plaintiff to do so, the defendant did not cause the option to be exercised. As a result of negotiations through his attorney, the plaintiff obtained a new lease from Mr. Giragosian, who then had leases from the owners of both parcels of property, but at a rent of $250 a month. The plaintiff's new sublease was for a term commencing on January 1, 1959, and ending on May 31, 1963.

With respect to the matter of damages, it was stipulated that the plaintiff was entitled to recover the sum of $165 which he had paid to Mr. Nemetz as the last month's rent under the lease of September 1954. In addition, it was stipulated that the plaintiff would testify that he paid attorney's fees in the amount of $500 for services relating to the difficulty with respect to the exercise of the option and relating to the negotiations which resulted in the new lease received from Mr. Giragosian.

The trial court found that the "plaintiff was damaged in the sum of $165.00 pre-paid rent deposit, $500.00 attorney fees, $4,845.00 additional rent, a total of $5,510.00." Judgment was rendered in favor of the plaintiff for that amount.

█ The instrument of lease as to lot 152 between the defendant Nemetz and Rosenthal and Frankel, to whose interests Giragosian later succeeded, was a sublease and did not operate as an assignment of the Bardelli lease since it was for a term which expired several months before that set forth in the Bardelli lease. █ As stated in *Barkhaus* v. *Producers Fruit Co.*, 192 Cal. 200 [219 P. 435], at pages 205-206: "It is elementary that a sublease, in order to operate as an assignment, must transfer to the sublessee the entire term of the original lessee in the whole or some part of the demised premises; and, of course, the assignment of the term, in order to terminate the privity of estate between the assignor and the original lessor, must transfer his term in the entire premises. . . . █ The term to be transferred to his assignee by such a tenant must be for a period of time at least equal to the remainder of the term of the original lease." (See also *Ericksen* v. *Rhee*, 181 Cal. 562, 567 [185 P. 847]; *Williams* v. *Hinckley*, 109 Cal.App. 574, 575-576 [293 P. 644]; *Kendis* v. *Cohn*, 90 Cal.App. 41, 58 [265 P. 844]; *Jordan* v.

*Scott,* 38 Cal.App. 739, 744-745 [177 P. 504].) ▇▇▇ Consequently, at the time of the transaction between the plaintiff and the defendant Nemetz, the latter still retained the right to exercise at the proper time the option for a renewal of the term under the Bardelli lease. Only Nemetz was entitled to exercise that option. (*Ablett* v. *Clauson,* 43 Cal.2d 280, 283 [272 P.2d 753].) Whether the defendant Nemetz retained any rights under the Greenhagen lease as to lots 149, 150 and 151 need not be discussed at this point because that lease had no provision with respect to a renewal of the term.

The instrument of lease between the plaintiff and defendant did not relate to all of lot 152 and, consequently, the right to exercise the option under the Bardelli lease remained in the defendant. But, as has been noted, he agreed with the plaintiff that he would "exercise his option to renew" the Bardelli lease. The evidence sustains the determination of the trial court that he breached his contract with respect to that undertaking.[1] The legal consequences of that breach remain for consideration.

There was an ambiguity in the document executed by the plaintiff and the defendant which arose from the use of the language that the instrument included "a storage space in the rear portion of the building . . . No. 10001 on South Figueroa Street." ▇▇▇ Under such circumstances it was the duty of the trial court to construe the language used after affording a full opportunity to the parties to produce evidence of the facts, circumstances and conditions surrounding the execution of the document and the conduct of the parties relative thereto. (See *Walsh* v. *Walsh,* 18 Cal.2d 439, 443 [116 P.2d 62] ; *Owsley* v. *Whelan Drug Co.,* 83 Cal.App.2d 454, 459 [189 P.2d 50] ; *Von Rohr* v. *Neely,* 76 Cal.App.2d 713, 715 [173 P.2d 828].) ▇▇▇ The cardinal rule in the construction of such an instrument is that the mutual intention of the parties as exhibited by their language, acts, and conduct shall govern. (See *H. S. Crocker Co., Inc.* v. *McFaddin,* 148 Cal.App.2d 639, 643 [307 P.2d 429].) ▇▇▇ As said in *Guttman* v. *Berry,* 83 Cal.App.2d 507 [189 P.2d 41], at page 510: "If a lessee takes possession of property under a lease containing an ambiguous and uncertain description of the property to be occupied and pays the stipulated rent it

---

[1] "A lease is both a contract and a conveyance; under such an agreement there are rights and obligations based upon the relationship of landlord and tenant as well as upon the contractual promises." (*Beckett* v. *City of Paris Dry Goods Co.,* 14 Cal.2d 633, 636 [96 P.2d 122].)

will be enforced as a lease if the parties act upon it as relating to particular premises. (*Beckett* v. *City of Paris Dry Goods Co.*, 14 Cal.2d 633, 637 [96 P.2d 122].)'' In applying the applicable law to the facts before it in the *Guttman* case, the court said (83 Cal.App.2d, at p. 511) : ''. . . it is clear that when the leased property was described as the property located at '346 and 346½ North LaCienega, Los Angeles' the lease was ambiguous as to the extent of the property demised. Therefore it was proper for the trial court to receive evidence showing the agreement between the parties, if any, as to the property which they intended to be covered by the description and the actual conduct of the parties in construing the description in the written lease. Here the conduct of the lessee and the lessor clearly shows that they understood the description as including as leased the property in question upon which the garage building was erected by defendants.''

That the defendant viewed the structures on lots 151 and 152 as a unit constituting one market building was a fair inference from the description used in the two agreements of lease relating to lots 149, 150 and 151 and lot 152, respectively, which were executed by him and Rosenthal and Frankel. In each the property involved is described as ''that certain store Premises occupying front and side of building No. 10001'' on Figueroa Street. That was also the address used in the instrument of lease of September 1954 between the plaintiff and the defendant; therein no reference was made to the premises by lot number. While the plaintiff's attorney prepared that document, the plaintiff testified that he gave his attorney no documents and that he knew of none given to the attorney by the defendant but believed that the attorney ''drew up this lease by conversation with Mr. Nemetz'' and the plaintiff. Consequently, the trial court was warranted in drawing the inference that the defendant did not inform the plaintiff that there was a divided ownership of the real property and that because of that fact two separate leases covered different portions of the market premises. In the light thereof, the trier of fact was justified in drawing the further inference that the plaintiff reasonably understood, as the defendant realized or should have realized he would, that all parts of the premises designated by the defendant as being in use in the operations of the retail liquor business were included in the language of his agreement with the defendant. (See *Platt* v. *Union Packing Co.*, 32 Cal.App.2d 329, 336 [89 P.2d 662].) The words ''a storage space in the

rear portion of the building" might, standing alone, have supported a construction that one distinct portion of the building was meant. But when the ambiguity with respect to the location of such "space" was removed by evidence of the surrounding circumstances and the conduct of the parties, the trial court was warranted in concluding that the language used was intended by the parties to embrace storage space located in several parts of the market premises. That such was the intention of the defendant finds support in the testimony of Mr. Rosenthal, who was called as a witness for the defendant. After stating that he and Mr. Frankel, upon their purchase of the food market business, gave the defendant "a lease back for $150 and . . . gave him storage . . . and an office . . ." (being the same space as to which the plaintiff had previously testified), Mr. Rosenthal further said: "We kept this behind there where that 152 is marked [lot 152 on the diagram received in evidence]. We had all groceries in there, and in return for that we gave Leo [Nemetz]—it was a real big store—we gave him that space in the back where it says 'Storage' and where it says 'Office' was actually upstairs and he had a room there where he kept his liquor and it was a double office upstairs and he used one-half of the office and I used the other half. . . . Q. And then you, your partner and Mr. Nemetz had an oral understanding as long as you were in possession of the leases on Lot 151 he could use the storage space as long as you were permitted to use this storage space here (indicating)? A. That's right."

While Mr. Rosenthal testified that his agreement with Mr. Nemetz for storage space was oral whereas the lease given back to Mr. Nemetz was written,[2] such fact did not preclude the conclusion that the plaintiff and the defendant intended that all of the storage space would be included within the terms of their agreement, along with the particular area where the retail liquor sales were made, both during the existing term and during the renewal which was to arise upon the exercise of the option. Such conclusion was justified even if the right to use such storage space was in the nature of a license (see *Caldwell* v. *Gem Packing Co.*, 52 Cal.App.2d 80, 84 [125 P.2d 901]) rather than that of the possessor of a legal estate arising out of the relationship of lessor and lessee.

[2]The contents of that lease were not placed in evidence since neither Mr. Rosenthal nor the defendant was able to find the lease or a copy thereof.

No problem of the right of the defendant to assign such a license is presented since Mr. Giragosian acquiesced in the plaintiff's use of the space in question until the end of the original term of the sublease executed by the plaintiff and the defendant. (See *Eastman* v. *Piper*, 68 Cal.App. 554, 560 [229 P. 1002].) The determinative factor is that, whatever the nature of the rights which the defendant had agreed that the plaintiff should have, the direct cause of the premature termination thereof was the defendant's failure to honor his undertaking with respect to the renewal of the term of the Bardelli lease by the exercise of the option, because it was a reasonable deduction from the facts disclosed in the record that the plaintiff's use of the premises would otherwise have continued as before for the contemplated additional years. That such a breach could result in an additional rental burden being placed on the plaintiff could reasonably be supposed to have been within the contemplation of the plaintiff and defendant at the time they executed their agreement. (See *California Press Mfg. Co.* v. *Stafford Packing Co.*, 192 Cal. 479, 483-484 [221 P. 345, 32 A.L.R. 114].)

The applicable law with respect to a breach of contract of the nature of that in the present case is stated in *Stern Co.* v. *Friedman*, 229 Mich. 623 [201 N.W. 961]. In the *Stern* case the defendant did not renew his lease with the owner, as he could have done under that lease, and thereby breached his agreement to do so which he had made with the plaintiff to whom he had leased a portion of the property. The plaintiff, upon such breach, entered into an agreement directly with the owner for the rental of the property. The court stated (201 N.W., at pp. 963-964) : ''Plaintiff is entitled to recover damages arising out of defendant's breach of the contract, and the measure thereof is the difference between the rent it would have had to pay defendant under renewal, and what it pays the owner for the same portion of the premises. . . . Plaintiff is entitled to recover at least nominal damages, and as much more as it has sustained by having to pay the owner of the premises a greater rental, if any, than it would have had to pay defendant for the part of the premises rented from him.''

Under the judgment in the present case, the court awarded damages with respect to three items. As to the item of $165, there can be no question of the plaintiff's right of recovery. The item of $4,845 represented an increased rental of $85 per month for 57 months. Aside from the question,

hereinafter considered, of whether a lesser number of months should have been used as a basis for such calculation of damages, support for such an award based on the additional monthly rental is found in the reasoning of this court in *Noble* v. *Tweedy,* 90 Cal.App.2d 738 [203 P.2d 778], a case involving a breach by the lessor of an agreement to construct a building. The building was not completed as required by the contract. The trial court assessed the plaintiff's damages as being in the amount of $75 per month for each month of the 10-year term of the lease, or a total of $9,000. The accrued damages were calculated to be $682.50, and the present value of the prospective damages was fixed at $6,455, making a total of $7,137.50, for which sum judgment was entered in favor of the plaintiffs. This court held that there had been a full and final breach of the covenant by the lessor and that the lessees were compelled to seek a complete recovery in one action for the full damage, both past and prospective, sustained by them. In answer to the argument that the judgment ignored the possibilities that the lessees might in the future breach their lease and be ousted, that they might fail in business, or that the lease might be terminated by the destruction of the building, and hence an award for prospective detriment might result in a "windfall" to the lessees, the court said (90 Cal.App.2d, at pp. 745-746) : "In the instant case, it is manifest that defendants committed a substantial breach of their contract, and that plaintiffs thereby failed to receive the full value of what they had bargained for. There is no uncertainty as to the fact of future damages but only as to the amount which will accurately compensate plaintiffs for the loss which they sustained. The undisputed evidence disclosed the present and past detriment, in terms of decreased value received, to be $75 per month. Upon this evidence the court could not have done otherwise than adopt this figure as a reasonably close approximation of what the future detriment would be, and in so doing properly ignored the various contingencies pointed out by defendants. The possibilities of a breach by plaintiffs, or insolvency, or of destruction of the building, are wholly speculative and fanciful. It is clear that an award of damages could not be *granted* upon the basis of anticipated future injuries or other events as purely hypothetical as these; and it follows by way of analogy, that they likewise do not constitute a sufficient basis for *denying* a recovery for damages which are otherwise reasonably certain to be sustained."

It is true that in the *Noble* case the trial court calculated the amount of the future damages on the basis of the present value thereof.[3] However, in the present case no contention with respect to that matter was made by the defendant in the trial court and none has been stated on this appeal. Hence this court is not required to give the subject particular consideration. (See *Philbrook* v. *Randall*, 195 Cal. 95, 104-105 [231 P. 739].)

The judgment must be modified, however, with respect to such item of $4,845. There is insufficient evidence upon which to determine that there was any increased rent paid by the plaintiff for the period of October 1, 1958, to December 31, 1958. The plaintiff's sublease with Mr. Giragosian at an increased rent was for 53 months (January 1, 1959, to May 31, 1963). Consequently, the damages should have been calculated on the basis of 53 months instead of 57 months. The damages so determined are in the amount of $4,505.

■ The award of damages of $500 for attorney's fees, however, falls in a different category from that of the item of damages last discussed. Since, as a matter of law, there appears to be no basis whatsoever for the item of $500 (see *Lee C. Hess Co.* v. *City of Susanville*, 176 Cal.App.2d 594, 599-600 [1 Cal.Rptr. 586]), this court is constrained to modify the judgment with respect thereto even though the matter was not the subject of an express contention on the part of the defendant at the time of the trial and has not been argued on this appeal. (See *Philbrook* v. *Randall, supra*, 195 Cal. 95, 105.)

■ The defendant also attacks the findings of fact. He asserts that there was no support in the record for the finding that at the time of the agreement of lease of September 1954, the defendant "did not have the estate or the right to convey an option to renew to the Plaintiff for an additional five (5) years after the termination of his lease or estate from Wilhelmina Bardelli on October 1, 1958 and as a result of the expiration of the Greenhagen lease which . . . expired on or about May, 1958 by its own terms." But whatever criticism might be made of that finding, it is manifest, in view of the evidence discussed hereinabove, that no prejudice was suffered

---

[3]With respect thereto this court said in the *Noble* case in part as follows (90 Cal.App.2d, at p. 747): "The practice of reducing future damages to present value is in full harmony with the fundamental principle that damages should be compensatory only, and has frequently been the subject of judicial approval."

by the defendant and, consequently, no reversal could be predicated upon such a claim of error.

 Except with respect to the subject of damages, in substance the court found that the allegations of each cause of action of the complaint were true. Because of that the defendant asserts that the judgment cannot stand since it is based upon conflicting findings of fact. He analyzes each count of the complaint as follows: "Count I alleges that defendant failed to exercise the option covenanted in the sublease. . . . [I]n Count II, plaintiff complains that, by reason of the premises, plaintiff's right to peaceful and quiet enjoyment was infringed, . . . Count III alleges that defendant warranted, in substance, that he could give such option but breached the covenant of warranty. . . . Count IV alleges that plaintiff was fraudulently induced to execute the sublease herein . . . while Count V, which incorporates the material allegations of Count IV, alleges the same false representations but says they were made innocently, or at any rate, omits the accusation of fraudulent intent on defendant's part." The defendant also asserts that "it is essential to observe that each count incorporates by reference and makes a part thereof, the material allegations of its predecessor or predecessors, with the result that the error of contradictoriness is compounded."

While approval cannot be given to the manner in which the findings of fact were prepared (see *Elliott* v. *Rodeo Land & Water Co.,* 141 Cal.App.2d 404, 415 [297 P.2d 129]), no prejudicial error has been established. In the first cause of action the plaintiff sought to recover damages because of the breach on the part of the defendant of his agreement to exercise the option for a renewal of the term under the Bardelli lease. As has been noted, the evidence supported the material findings of fact in favor of the plaintiff with respect to that cause of action. It is, of course, true that the measure of damages for such a breach of contract may differ from the measure to be applied with respect to another cause of action pleaded in the same complaint but predicated upon a different theory, such as that of the fraudulent inducement of the execution of a lease. (See *Collins* v. *Kobold,* 146 Cal.App.2d 868, 872 [304 P.2d 182].) But it is to be noted that in the present case none of the allegations of the other causes of action which the court found to be true is materially inconsistent with the findings of fact as to the first cause of action. (*Cf. Hackler* v. *Tubach,* 129 Cal.App. 680, 684-685 [19 P.2d

295].) Thus, as to the allegations of fraud, it is to be noted that a fraudulently induced agreement which has not been rescinded stands as a contract (see *Bagdasarian* v. *Gragnon,* 31 Cal.2d 744, 750 [192 P.2d 935]), and it is manifest that any breach of a covenant thereof may give rise to an action in contract for any legally recognized damages for which the injured party has not theretofore received compensation. ▆▆▆ Consequently, guidance in the disposition of the present case is found in *Crogan* v. *Metz,* 47 Cal.2d 398 [303 P.2d 1029], wherein the Supreme Court said at page 403: "From its general finding that the allegations of the amended complaint are true, it is not readily ascertainable upon which of the theories pleaded the court based its judgment. It is well established that a complaint may plead different theories on which relief is sought with legal propriety. [Citations.] It is noted that here each of the counts is based upon the same allegations of fact and that there are no contradictory or antagonistic facts. [Citations.] ▆▆▆ If the plaintiff makes no election or is not otherwise estopped [citation] the election as to which cause of action is sustained is, after the taking of all the evidence, a matter for the judge or the jury. [Citation.] ▆▆▆ Where an appeal is taken from such a judgment the reviewing court has the power to disregard particular theories and findings and to affirm the judgment on a theory which is supported by the finding and evidence in order that causes may be disposed of by a single appeal and without further proceedings in the trial court. [Citations.] The main issue on this appeal, therefore, is whether the findings and the judgment may be sustained by the pleadings and proof as to any of the causes of action stated." (See also *Estate of Wolf,* 174 Cal.App.2d 144, 150 [344 P.2d 37]; *Shasta Water Co.* v. *Croke,* 128 Cal.App.2d 760, 765 [276 P.2d 88]; *Eistrat* v. *Brush Industrial Lumber Co.,* 124 Cal. App.2d 42, 45 [268 P.2d 181]; *Wells Fargo Bank* v. *Brady,* 116 Cal.App.2d 381, 402 [254 P.2d 71].) ▆▆▆ Such reasoning is applicable even though the same measure of damages may not apply to each cause of action as pleaded in the complaint, the allegations of which were found to be true. (See *Crogan* v. *Metz, supra,* 47 Cal.2d 398, 404-405.)

The judgment is modified by reducing the principal amount thereof to $4,670, and, as so modified, it is affirmed. The respondent shall recover his costs on appeal.

Shinn, P. J., and Files, J., concurred.